**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

|  |  |
|---|---|
| THE MINOCQUA BREWING COMPANY LLC, and KIRK C. BANGSTAD, | |
| Plaintiffs, | |
| vs. | Case No. 23-cv-578 |
| THE TOWN OF MINOCQUA, MARK HARTZHEIM, SUSAN HEIL, JOHN THOMPSON, **BRIAN FRICKE, ERIKA PETERSON, DOES 3-10, THE COUNTY OF ONEIDA, SCOTT HOLEWINSKI, KARL JENNRICH, TODD TROSKEY, and ROES 1-10;** | |
| Defendants. | |

---

**FIRST AMENDED COMPLAINT AND REQUEST FOR**
**DECLARATIVE AND INJUNCTIVE RELIEF**

---

PLAINTIFFS KIRK BANGSTAD and the MINOCQUA BREWING COMPANY LLC bring this Complaint against DEFENDANTS, THE TOWN OF MINOCQUA, MARK HARTZHEIM, SUSAN HEIL, JOHN THOMPSON, BRIAN FRICKE, ERIKA PETERSON, DOES 3-10, THE COUNTY OF ONEIDA, SCOTT HOLEWINSKI, KARL JENNRICH, TODD TROSKEY and ROES 1-10 for their unconstitutional retaliation against PLAINTIFFS' for their protected political activity and speech in violation of the First Amendment to the United States Constitution and the Constitution of the State of Wisconsin, and for violations of

PLAINTIFFS' rights to due process and equal protection pursuant to the Fourteenth

Amendment to the United States Constitution.

## **INTRODUCTION**

1. PLAINTIFFS bring this complaint under 42 U.S.C. § 1983 seeking damages as
   well as injunctive and declaratory relief from DEFENDANTS for violations of
   Kirk Bangstad's rights, both individually and as owner of the Minocqua Brewing
   Company LLC, and the Minocqua Brewing Company LLC's rights itself under
   the United States Constitution, the Wisconsin Constitution and Wisconsin state
   law.

2. The DEFENDANTS in this action are THE COUNTY OF ONEIDA, THE
   TOWN OF MINOCQUA, MARK HARTZHEIM, SUSAN HEIL, BRIAN
   FRICKE, ERIKA PETERSON, JOHN THOMPSON, SCOTT HOLEWINSKI,
   KARL JENNRICH, TODD TROSKEY, DOES 3-10 and ROES 1-10 each of
   whom exercised decision and policy making authority over the County of Oneida
   and the Town of Minocqua and each of whom violated PLAINTIFFS' rights in
   their official and/or individual capacities.

3. DEFENDANTS have been exercising their authority as though they were little
   despots ruling over the Kingdoms of Minocqua and ONEIDA COUNTY. Their
   authoritarian and unconstitutional conduct has been nearly limitless, and their

campaign of retaliation, harassment, and intimidation against the PLAINTIFFS has known no end. They have repeatedly, unconstitutionally, and unjustifiably impeded PLAINTIFFS' zoning applications, placed zoning conditions on PLAINTIFFS that are intended to obstruct the rights secured to PLAINTIFFS by the First Amendment to the United States Constitution, attempted to unconstitutionally enforce ordinances against PLAINTIFFS, and fabricated authority to take enforcement actions against PLAINTIFFS. Defendants have further discriminated against PLAINTIFFS, intimidated PLAINTIFFS, and retaliated against PLAINTIFFS because of PLAINTIFFS' constitutionally protected activities in violation of the First Amendment to the United States Constitution and Article 1, § 4 of the Wisconsin Constitution. Further, and more concerningly, the retaliatory conduct of the DEFENDANTS is likely to chill political activity and other protected speech in the Town of Minocqua and the COUNTY OF ONEIDA for years to come.

4.     Similarly, and just as alarmingly, DEFENDANTS have infringed upon PLAINTIFFS' right to due process under the Fourteenth Amendment to the United States Constitution through their imposition of an extended and notably more arduous zoning procedure than other similarly situated businesses have endured. DEFENDANTS have further refused to provide PLAINTIFFS with zoning recommendations and approvals that they have provided to numerous

other similarly situated businesses in their respective jurisdictions.  They have further allowed clearly biased members of both the Town Board of Supervisors, the Oneida County Planning and Development Committee, and the Oneida County Planning and Zoning Department to adjudicate zoning decisions related to the Minocqua Brewing Company LLC.

5.    The Town of Minocqua has additionally violated PLAINTIFFS' right to equal protection by way of a campaign of intimidation, wherein DEFENDANTS undertook enforcement actions against the Minocqua Brewing Company LLC, without any authority to do so.  They have also regularly and repeatedly filed complaints against the Minocqua Brewing Company with Oneida County for alleged ordinance violations while refusing to file similar complaints against other businesses engaged in comparable conduct within the Town of Minocqua.

6.    The retaliatory actions by the Town of Minocqua, under the leadership of current Chairman Mark Hartzheim, current Supervisors Susan Heil, Brian Fricke, Erika Peterson, former Supervisor John Thompson, and DOES 3-10, persist to this day and are explicitly linked to Mr. Bangstad's progressive political activities. It is also crucial to note that Susan Heil and John Thompson, during pertinent periods and presently, are affiliated with the Facebook hate group ironically named "We Love You Kirk."  The Facebook group "We Love You Kirk" is a hate group

created by Mr. Bangstad's right-wing political opponents, and launches daily assaults aimed at the Minocqua Brewing Company and Mr. Bangstad, often for their left-wing political advocacy.[1]

7.  Ultimately, DEFENDANTS have been exercising their authority with an entitlement reminiscent of King George III and treating Minocqua and ONEIDA COUNTY as their personal fiefdoms. They have taken it upon themselves to determine who merits the constitutional protections guaranteed to all Americans and who does not. They have additionally imposed their own criteria for what is acceptable political activity within the Town of Minocqua and the COUNTY and use their powers to punish any individual and/or businesses that criticizes or disagrees with them.  DEFENDANTS' repeated violations of the Constitution of the United States and their authoritarian behavior have been nothing short of abhorrent, and it is up to this Court to end the DEFENDANTS' illegal and unconstitutional behavior and hold the DEFENDANTS accountable for their violations of the Constitution of the United States and State of Wisconsin.

## JURISDICTION AND VENUE

8.  This civil action is brought to redress deprivations of constitutional rights protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the First and Fourteenth

---

[1] https://www.facebook.com/groups/3757017811009117/

Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367 and statutory and constitutional provisions.

9. Jurisdiction is also proper under federal common law and 28 U.S.C. § 1367(a).

10. Venue is proper in this Court under 28 U.S.C. § 1391(b), because DEFENDANTS reside in, and all incidents, events, and occurrences giving rise to this action occurred in, the County of Oneida, Wisconsin within the Western District of Wisconsin.

## **PARTIES**

11. The Plaintiff, Minocqua Brewing Company LLC (hereinafter MBC), is a legally incorporated, licensed, and registered commercial entity engaged in operations within the State of Wisconsin and across the United States of America. This includes conducting business from a publicly accessible tap room location situated in the Town of Minocqua, located within Oneida County. The company is actively involved in the production and distribution of an array of premium beers, other beverages, and assorted consumer goods.

12. The Plaintiff, Kirk C. Bangstad (hereinafter BANGSTAD), is the owner and operator of the Minocqua Brewing Company LLC. In these and other capacities, he manages, supervises, and oversees the commercial distribution of the various products of the business throughout the State of Wisconsin and nationwide,

including but not limited to a popular tap room located at 329 East Front Street in the Town of Minocqua.

13.    The Defendant, Town of Minocqua (hereinafter TOWN), is an unincorporated, official governmental entity established and maintained under the Constitution and the laws of the State of Wisconsin to serve, support, protect, and guarantee the rights, interests, and positions of its resident constituents. For the purposes of the allegations in this civil rights complaint, it acts and operates by and through the Minocqua Town Board of Supervisors (hereinafter TOWN BOARD) and the Minocqua Plan Commission (hereinafter TOWN COMMISSION), among other established offices, agencies, and units of town government.

14.    The Defendants, Mark Hartzheim (hereinafter HARTZHEIM), Susan Heil (hereinafter HEIL), Brian Fricke (hereinafter FRICKE), Erika Peterson (hereinafter PETERSON) and John Thompson (hereinafter THOMPSON) are the Chairman of the Minocqua Town Board, and current and former members of the Minocqua Town Board of Supervisors, respectively.  At all times relevant to this Complaint, DEFENDANTS HARTZHEIM, HEIL, FRICKE, PETERSON, and THOMPSON were acting under the color of law and exercising policy and decision-making authority over the Town of Minocqua.  HARTZHEIM, HEIL,

FRICKE, PETERSON, and THOMPSON are sued in both their official and individual capacities.

15. At all relevant times, DOES 3-10 are employees, elected officials, or other individuals with policy and decision-making authority over the Town of Minocqua and are sued in both their official and individual capacities.

16. The Defendant, County of Oneida (hereinafter COUNTY), is an unincorporated, official governmental entity established, and maintained under the Constitution and the laws of the State of Wisconsin to serve, support, protect, and guarantee the rights, interests, and positions of its resident constituents. For the purposes of the allegations in this civil rights complaint, it acts and operates by and through the Oneida County Board of Supervisors (hereinafter COUNTY BOARD) and the Oneida County Planning and Development Committee (hereinafter COUNTY COMMITTEE), among other established offices, agencies, and units of County government including the Oneida County Planning and Zoning Department (hereinafter ZONING DEPARTMENT).

17. The Defendant, SCOTT HOLEWINSKI (hereinafter HOLEWINSKI) is and was at all relevant times, the Chairman of the Oneida County Board of Supervisors and the Oneida County Planning and Development Committee and was acting under the color of law and exercising policy and decision-making authority over

ONEIDA COUNTY.  HOLEWINSKI is sued in both his official and individual capacities.

18.     The Defendant, KARL JENNRICH (hereinafter JENNRICH) is, and was at all relevant times, the director of the Oneida County Planning and Zoning Department and was acting under the color of law and exercising policy and decision-making authority over the COUNTY.  JENNRICH is sued in both his official and individual capacities.

19.     The Defendant, TODD TROSKEY (hereinafter TROSKEY) is, and was at all relevant times, the assistant director of the Oneida County Planning and Zoning Department and was acting under the color of law and exercising policy and decision-making authority over the COUNTY.  TROSKEY is sued in both his official and individual capacities.

20.     At all relevant times, ROES 1-10 are employees, elected officials, or other individuals with policy and decision-making authority over the COUNTY and are sued in both their official and individual capacities.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

21.     PLAINTIFFS repeat and reallege each and every allegation in paragraphs 1 through of 20 this Complaint with the same force and effect as if fully set forth herein.

22.   Throughout recent years, BANGSTAD has exercised publicly and proudly his right and privilege under the First Amendment to the United States Constitution to engage in political discourse, promotion, and advocacy, including his overt support for the election of various national, state, and local candidates to public office. In so doing, BANGSTAD has not only articulated his legally protected and constitutionally guaranteed views, perspectives, and opinions in various writings, publications, electronic communications, radio broadcasts, and public appearances but has also visibly posted and overtly displayed various signs and posters in the heavily trafficked and frequently visited downtown area of the Town of Minocqua, in Oneida County.

23.   During many of those recent years, including but not limited to periods of national, statewide, and local campaigns, BANGSTAD has manufactured and distributed to patrons and clients of MBC several of his high-quality beers and other beverages with various types of on-product labeling, similarly promoting and signaling his support of and advocacy for candidates for public office, along with related issues, concerns and challenges within the public domain and ambit of common interest.

24.   In further exercise of his constitutionally guaranteed rights and privileges under the First Amendment to the Constitution of the United States of America,

BANGSTAD has also manufactured various items of clothing that similarly articulate and advance his views, perspectives, and opinions on issues, concerns, and challenges within the public domain and ambit of common interest.

25. These political and campaign-related actions by BANGSTAD and MBC have attracted and retained the attention, the support, and the encouragement of many residents in and throughout the Town of Minocqua, Oneida County, the State of Wisconsin, and the nation generally.

26. Those same expressions of free speech have also attracted and retained the disapproving attention, public disagreement, and overt condemnation by others, including some elected and appointed officials, agents, and employees of the TOWN and COUNTY, including HARTZEIM, THOMPSON, FRICKE, PETERSON, HEIL, HOLEWINSKI, JENNRICH, and TROSKEY.

27. BANGSTAD's problems with the COUNTY began in late September of 2020, when JENNRICH sent BANGSTAD a letter demanding that he remove a Joe Biden Presidential sign from his building at 238 Lakeshore Drive in the Town of Minocqua, citing Oneida County Ordinance 9.78 E (4).

28. Upon information and belief, the TOWN and/or HARTZHEIM used their influence to pressure JENNRICH to take the aforementioned enforcement actions against BANGSTAD.

29.     JENNRICH did not take the same enforcement action against the equally large Trump presidential signs placed around Oneida County, however.

30.     JENNRICH's enforcement action was a direct violation of the rights secured to BANGSTAD by the First Amendment to the United States Constitution.

31.     BANGSTAD refused to allow the COUNTY to violate the rights he as an American held so dearly and fought back using his social media presence.  He was ultimately victorious, and the COUNTY was forced to stand down, but they never forgot or forgave him for refusing to comply with their unconstitutional order.

32.     The dispute between Bangstad and MBC, on the one hand, and the TOWN and COUNTY, on the other, over the Biden sign and the TOWN's and COUNTY's response to the Covid pandemic drew national attention, including in a New York Times article published on October 29, 2020.[2]

33.     In early 2021, PLAINTIFFS purchased a historic Texaco gas station, which had served as a bike shop for decades under the name "Z-Best bikes." The structure's size made maintaining an indoor showroom difficult so they would regularly use their driveway and an adjacent grassy area to the east of their driveway as an

---

[2]https://www.nytimes.com/2020/10/29/us/politics/wisconsin-trump-biden-coronavirus.html.

open-air showroom. This grassy area, situated between the historic Texaco station and U.S. Highway 51, has become known as the "pork chop" due to its distinctive pork chop like shape.  See Exhibit A, Photograph of Prior Outdoor Operations at Z-Best bikes.

34. After purchasing the property and hiring an architect to design renovations and a future site plan, PLAINTIFFS began the zoning process which for the majority of small businesses in Minocqua is very simple and straightforward.

35.  In order to operate a business in the Town of Minocqua and many parts of Oneida County, one must operate under either an Administrative Review Permit (ARP) or a Conditional Use Permit (CUP).  BANGSTAD was advised by his architect to initially apply for an ARP and then later to apply for a CUP.

36. ARPs are essentially just a CUP by a different name with slightly different zoning requirements and a different approval process.  Wisconsin state statutes treat them as identical instruments, however.

37. Obtaining an ARP in the Town of Minocqua is a multi-step process.  An applicant must first submit their application to the ZONING DEPARTMENT.   The application is then presented to the TOWN COMMISSION who then votes for or against a recommendation, and then sometimes submits the application to the TOWN BOARD for a second vote for or against a recommendation.  Regardless

of the outcome, after the TOWN makes its recommendation decision, the application then goes to the ZONING DEPARTMENT for approval. A recommendation to approve from a local municipality effectively guarantees approval by the ZONING DEPARTMENT and a recommendation to deny makes approval incredibly unlikely.

38. The ZONING DEPARTMENT also has a policy of giving complete control over the conditions of an ARP to local municipalities.

39. Consequently, on August 19, 2021, PLAINTIFFS submitted their ARP application to the ZONING DEPARTMENT, which then submitted the ARP application to the TOWN COMMISSION on September 9, 2021.

40. The TOWN's unconstitutional conduct began almost immediately thereafter and has been defined by a campaign of harassment, intimidation, retaliation, and violations of PLAINTIFFS' rights secured to them by the First and Fourteenth Amendments to the United States Constitution and Article 1, § 4 of the Wisconsin State Constitution.

41. The PLAINTIFFS' ARP application included a request for a waiver of 7 parking spaces which were required by county ordinance for the operation of their tap room. When PLAINTIFFS made this request, they did not foresee any issues receiving parking space waivers as the TOWN has promulgated a very clear

custom of always recommending that the ZONING DEPARTMENT waive parking space requirements.  The ZONING DEPARTMENT maintains a very similar custom of always waiving parking space requirements as well.

42.   In fact, over the course of the past three years, the TOWN has recommended the waiver of 174 parking spaces for 11 businesses within the downtown Minocqua area alone, and upon information and belief, has not refused to recommend a parking requirement waiver for any business during those same three years. Similarly, the ZONING DEPARTMENT and/or COUNTY COMMITTEE approved the waiver of those 174 parking spaces for these other businesses. See Exhibit B, Parking Waivers Granted Between 2020-2023.

43.   The parking space waivers were incredibly important for PLAINTIFFS' future plans for their tap room as they intended to build an outdoor beer garden on their property and would not have enough space for parking.

44.   On September 14, 2021, the TOWN COMMISSION held a meeting to discuss PLAINTIFFS' ARP application. At this meeting, HARTZHEIM and the TOWN COMMISSION refused to recommend that PLAINTIFFS receive their requested parking space waivers and HARTZHEIM also expressed concern that BANGSTAD would use the property to display left-wing political signs as he had previously done at his prior Minocqua Brewing Company location.

45. The COMMISSION did provisionally approve an ARP recommendation pending final recommendation by the BOARD, but it was approved without the requested parking space waivers.

46. After the meeting, Carla Blankenship, an employee of the ZONING DEPARTMENT, stated that she was very surprised that the MBC did not receive a recommendation for a parking space waiver because it usually was "no big deal."

47. As outlined earlier in this Complaint, the TOWN has a long history of always recommending parking space waivers.  In fact, when BANGSTAD owned and operated the Minocqua Brewing Company Inc., his prior business at a different downtown Minocqua location, he had received parking space waivers and was even allowed to use parking spaces owned by the TOWN.

48. Further, when BANGSTAD sold that prior business, The Minocqua Brewing Company Inc., in 2021, the individual who purchased the business and the building applied for an ARP and received a recommendation from the TOWN for 43 parking space exemptions, and they were also allowed to use parking spaces owned by the TOWN.

49. Similarly in 2020, the COMMISSION recommended and the ZONING DEPARTMENT approved a waiver of 12 required parking spaces for Café

Sonder, a small coffee shop operating in downtown Minocqua.  Café Sonder required the parking space waivers so they could use their building's former parking lot as an outdoor patio dining area.  Effectively they were granted exactly the same recommendation that PLAINTIFFS were requesting for MBC.

50.   The TOWN COMMISSION's findings were first considered by the TOWN BOARD on November 2, 2021. A public meeting was held, but ultimately PLAINTIFFS were asked to return with a new site plan because the TOWN BOARD was not going to recommend that PLAINTIFFS receive 7 parking space waivers.

51.   PLAINTIFFS went in front of the TOWN BOARD again on December 21, 2021. HARTZHEIM, THOMPSON, FRICKE, and HEIL all appeared at this meeting and deliberated and voted on PLAINTIFFS' ARP application.

52.   Upon information and belief, PLAINTIFFS' ARP application could have been considered at an earlier TOWN BOARD meeting, but the TOWN BOARD wanted to intentionally delay PLAINTIFFS' ARP application in order to make it more difficult for them to commence operations before the start of the summer season in 2022.

53.   THOMPSON was a member of the Facebook group "We Love You Kirk" on the date of this meeting. See Exhibit C, We Love You Kirk Screenshot 1 (demonstrating that THOMSPON is a member of this group).

54.   It is unclear if HEIL had joined the group "We Love You Kirk" on the date of this meeting; she may have joined at a later date.  See Exhibit D, We Love You Kirk Screenshot 2 (demonstrating that HEIL has been a member of this group for over a year).

55.   As stated earlier in this Complaint, "We Love You Kirk" is a Facebook hate page dedicated to attacking BANGSTAD and MBC for their left-wing political advocacy.  See Exhibit E (showing a sample of posts from the We Love You Kirk Facebook Group).

56.   At the December 21, 2021, TOWN BOARD meeting, BANGSTAD, and ZONING DEPARTMENT director JENNRICH explained that the location for MBC did not have the physical space necessary to include 7 parking spaces.

57.   At the meeting, HARTZHEIM also requested several conditions be placed on MBC that had never previously been placed on a business operating in Minocqua. The conditions were not entered into the final ARP recommendation but only because a member of the TOWN professional staff objected to the conditions and pointed out that they had never been placed on another business before.

58.   The TOWN BOARD along with HEIL, and FRICKE, eventually voted to recommend the ARP but only once unnecessary and burdensome conditions were added to the ARP, each of which was intended to make PLAINTIFFS' business significantly more difficult to operate. See Exhibit F, Draft TOWN BOARD Minutes from 12/21/2021.

59.   One of the unnecessary and burdensome conditions recommended by the BOARD was that PLAINTIFFS be required to enter into a revocable license agreement with the TOWN to allow access across the "pork chop" from U.S. Highway 51 to the MBC tap room parking lot.

60.   The license agreement required by the TOWN BOARD allowed the TOWN to revoke access at any time and without any form of due process, effectively giving the TOWN control over the property.  Upon information and belief, the TOWN does not regularly require abusive and controlling licensing agreements for other businesses applying for ARPs or CUPs.

61.   During the 20-plus year span of Z-Best bikes' operation at 329 East Front Street, a driveway was present allowing vehicles to cross the pork chop, which provided access from U.S. Highway 51 to the Z-Best bikes parking lot at 329 Front Street.

62.     It should be noted that the TOWN did not mandate that Z-Best bikes have a revocable license agreement before they would allow customers to drive over the pork chop and access the Z-Best bikes parking lot.

63.     Unfortunately for PLAINTIFFS, no appeal process existed to challenge the TOWN BOARD's recommendation.

64.     Once the burdensome ARP was recommended to the ZONING DEPARTMENT, HARTZHEIM continued to use his position as chairman of the TOWN BOARD to prevent PLAINTIFFS from receiving the parking exemptions that every other applicant over the previous three years had been provided.

65.     On March 8, 2022, MBC'S ARP was approved by the ZONING DEPARTMENT with only one parking spot waiver, and a condition forbidding outdoor displays and signage.

66.      At the request of HARTZHEIM, THOMPSON, FRICKE, HEIL, and the TOWN, MBC'S ARP also included the unusual provision that forbade PLAINTIFFS from outdoor "displays and signage." The specific language is not provided for in County ordinances, and upon information and belief, that restriction was intended to prevent PLAINTIFFS from exercising their rights under the First Amendment to the United States Constitution to display political signs and was similarly in

direct retaliation for BANGSTAD's prior fight with the COUNTY over his large Biden sign.  See Exhibit G, TOWN BOARD Letter RE MBC ARP Conditions.

67.   JENNRICH approved all of the conditions of the ARP.

68.   The ARP approval did not end the unconstitutional conduct of the DEFENDANTS, however. If anything, it only exacerbated their campaign against PLAINTIFFS.

69.   As the summer season of 2022 approached, Defendants HARTZHEIM, HEIL, THOMPSON, FRICKE, PETERSON, HOLEWINSKI, TROSKEY, JENNRICH, DOES 3-10, and/or ROES 1-10 conspired to use their positions of power and authority to prevent the MBC tap room from opening its doors.

70.   On May 25, 2022, The TOWN, by and through the Town of Minocqua attorney Greg Harrold, sent PLAINTIFFS a letter commanding PLAINTIFFS not to open their doors until every condition of their ARP was met and not to place tents on the property to create outdoor seating.  The TOWN did not have the authority to enforce either of these commands, and Greg Harrold's letter was sent to PLAINTIFFS with the sole purpose of intimidating and harassing PLAINTIFFS. Exhibit H, Letter from Gregory Harrold RE 329 East Front Street.

71.  Based on Greg Harolds' letter, PLAINTIFFS secured a lease for 317 East Front Street so they would be able to operate a tap room while they fulfilled all of the conditions of their ARP.

72.  Upon information and belief, while PLAINTIFFS were operating at their 317 Front Street location, the TOWN submitted several complaints to JENNRICH and the ZONING DEPARTMENT, either directly or via agents, asserting that the PLAINTIFFS were operating a tap room at 317 East Front Street without an ARP for that location.

73.  JENNRICH, as director of the ZONING DEPARTMENT, issued a citation against PLAINTIFFS for operating at 317 East Front Street without an ARP.

74.  JENNRICH and the ZONING DEPARTMENT claim to maintain a policy in which they only enforce zoning ordinances when there is a complaint, even if those complaints are intended to retaliate against an individual for constitutionally protected activities.

75.  Over the last 30 years, approximately 15 other businesses have operated at 317 East Front Street without an ARP or CUP, and the TOWN never filed complaints against any of the prior businesses with the County, even though the TOWN would have known that the aforementioned businesses were operating without an ARP or CUP.

76.    Similarly, this was the first citation issued by the ZONING DEPARTMENT or the COUNTY in the last 30 years against a business operating at 317 East Front Street.

77.    Shortly thereafter, DEFENDANTS HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON, and/or DOES 3-10 arranged to hold a Town Board of Supervisors meeting scheduled for June 7, 2022, with the intention of holding a vote to order PLAINTIFFS not to open the MBC tap room before completing each of the conditions of their ARP.  The TOWN did not have the authority to enforce the conditions of PLAINTIFFS' ARP, however, nor did PLAINTIFFS' ARP require that each of the conditions be met before the tap room opened.

78.    On June 5, 2022, in another attempt to intimidate and harass PLAINTIFFS, THOMPSON used the right-wing Facebook hate page "We Love You Kirk" to invite BANGSTAD's political adversaries to the June 7, 2022, meeting.  See Exhibit, I THOMPSON Facebook Post.

79.    On June 7, 2022, the TOWN held a TOWN BOARD meeting to vote to bar PLAINTIFFS from opening the MBC tap room at 329 East Front Street.

80.    THOMPSON was instructed by the town attorney to recuse himself from the June 7, 2022 vote due to his conduct on June 5, 2022.  HEIL, who is believed to have also been a member of "We Love You Kirk" the right-wing Facebook hate page

on June 7, 2022, did not recuse herself, however. See Exhibit D (demonstrating that Heil has been a member of the group for over one year).

81.  The first action taken by the TOWN BOARD on June 7, 2022 was to require PLAINTIFFS to post a $30,000 bond to ensure PLAINTIFFS' compliance with the ARP.

82.  After the bond vote, TOWN professional staff finally interjected and explained that the TOWN BOARD did not have the authority to prevent PLAINTIFFS from opening their taproom and the meeting was adjourned.

83.  Upon information and belief, the TOWN sent the letter, held the meeting, and voted to require PLAINTIFFS to post a bond knowing that they did not have the authority to prevent PLAINTIFFS from opening their tap room.

84.  PLAINTIFFS finally opened at their 329 East Front Street location and set up tents in their parking lot in late June of 2022.

85.  Upon information and belief, the TOWN proceeded to make repeated complaints, either directly or via agents, about PLAINTIFFS' alleged violations of their ARP's restrictions on outdoor activities and signage knowing that at least two other businesses in downtown Minocqua were operating under ARPs with the same restrictions and were engaging in outdoor activities. DEFENDANTS did

not file complaints against the other violating businesses, nor cause complaints to be filed against the other violating businesses during the relevant time period, however.

86.     The TOWN, in a further attempt to injure PLAINTIFFS' business, requested that the COUNTY block off access to PLAINTIFFS' parking lot from U.S. Highway 51, and the COUNTY complied with this request and placed concrete barriers separating MBC'S tap room from U.S. Highway 51.

87.     JENNRICH, knowing that these complaints were directed in bad faith at PLAINTIFFS in retaliation for their constitutionally protected activities, issued three citations, the first on August 1, 2022, the second on August 17, 2022, and the third on September 26, 2022.  Jennrich issued these citations knowing that he was not enforcing the same ordinance against similarly situated businesses.

88.     Shortly thereafter, and in an effort to comply with COUNTY ordinances, PLAINTIFFS began trying to amend their ARP in order to allow them to engage in outdoor operations.

89.     Feeling frustrated, PLAINTIFFS retained attorney Mark Leitner to try and expedite the zoning process.  Attorney Leitner sent the COUNTY a demand letter threatening suit on September 14, 2022.

90.   The COUNTY BOARD held a closed-door meeting sometime thereafter to discuss Attorney Leitner's letter.  After the closed-door meeting, HOLEWINSKI discussed the need to delay PLAINTIFFS' CUP application until the following summer in order to have the opportunity to revoke PLAINTIFFS' ARP.

91.   After failing to have their ARP amended, PLAINTIFFS applied for a CUP with the COUNTY on November 17, 2022, and then reapplied on November 29, 2022, in effect starting the entire zoning process over again.

92.   Throughout the entire CUP application process, HARTZHEIM used his position as Chairman of the Town Board of Supervisors to deliberately interfere with PLAINTIFFS' CUP application by consistently contacting TROSKEY with a variety of demands and suggestions and using TROSKEY to obstruct and disrupt the progression of the application process.

93.   Upon information and belief, HARTZHEIM reached out to the COUNTY regarding PLAINTIFFS' zoning applications significantly more frequently than he had done for any previous project.

94.   JENNRICH and TROSKEY, knowing that HARTZHEIM was intentionally interfering in the zoning process, allowed HARTZHEIM to slow and disrupt the process.

95.   PLAINTIFFS drafted their CUP application and designed their site plan to meet the TOWN BOARD's demand that they have six available parking spots by placing parking spaces on the "pork chop."

96.   On or about April 10, 2023, PLAINTIFFS' CUP application was considered by the TOWN BOARD, and the TOWN BOARD, including DEFENDANTS HARTZHEIM, THOMPSON, FRICKE, PETERSON, and HEIL voted not to allow PLAINTIFFS to use the "pork chop" for parking, even though they allowed the prior business at 329 Front Street to use the "pork chop" as an outdoor showroom, and voted to recommend denial of PLAINTIFFS' CUP application by the COUNTY COMMITTEE.

97.   On April 18, 2023, JOHNSON was replaced on the TOWN BOARD by William Fried.

98.   On April 19, 2023, the COUNTY COMMITTEE, led by HOLEWINSKI, voted to deny PLAINTIFFS' CUP application based, at least in part, on the recommendation of the BOARD.  The COUNTY COMMITTEE noted that the TOWN was not going to approve the use of the pork chop for parking so the PLAINTIFFS' site plan would not have the requisite 6 parking spaces needed for approval and that PLAINTIFFS would not be getting a waiver.

99.   PLAINTIFFS opened for the summer season in early May 2023, and upon information and belief, DEFENDANTS HARTZHEIM, FRICKE, PETERSON HEIL, and/or DOES 3-10 promptly initiated a new campaign of complaints against PLAINTIFFS to the COUNTY. These complaints typically referenced PLAINTIFFS' engagement in outdoor activities in violation of the conditions of their ARP.

100.  DEFENDANTS again failed to file complaints against at least two other businesses in downtown Minocqua that were also engaging in outdoor activities while operating under an ARP.  The TOWN also demanded that the COUNTY revoke PLAINTIFFS' ARP.  This campaign of disparate treatment continued until at least August 2, 2023.

101.  PLAINTIFFS filed another CUP application with the COUNTY COMMITTEE on May 10, 2023.  This new CUP application again asked for several parking space waivers.

102.  The COMMISSION met to discuss PLAINTIFFS' new CUP application on May 30, 2023 and voted to recommend the denial of PLAINTIFFS' CUP application. After the meeting, HARTZHEIM sent a letter to the COUNTY COMMITTEE demanding that they deny the CUP application because it was not sufficiently

different from the initial CUP application, and as such, county ordinances required that PLAINTIFFS wait at least a year before reapplying for a new CUP.

103. On June 14, 2023, the COUNTY COMMITTEE held a meeting to address HARTZHEIM's concerns and found that the new CUP application was sufficiently different, and PLAINTIFFS were allowed to continue with their reapplication.

104. On July 18, 2023, the BOARD, including DEFENDANTS HARTZHEIM, FRICKE, PETERSON, and HEIL met and voted to recommend the denial of PLAINTIFFS' new CUP application for approval by the COUNTY COMMITTEE. The TOWN BOARD was specifically concerned about MBC's request for parking exemptions and similarly alleged that MBC customers had been walking across the "pork chop," an action that the TOWN BOARD found unacceptable.

105. Once again, PLAINTIFFS had no opportunity to appeal DEFENDANTS' recommendation for denial of their CUP.

106. On July 26, 2023, revocation of PLAINTIFFS' ARP was considered by the COUNTY COMMITTEE; HOLEWINSKI was unable to attend but wrote an email stating that PLAINTIFFS' ARP should be revoked.

107. The COUNTY COMMITTEE adjourned the meeting prematurely because they did not want PLAINTIFFS to have the opportunity to discuss the various constitutional violations they suffered at the hands of the DEFENDANTS.

108. Revocation of PLAINTIFFS ARP was again discussed by the COUNTY COMMITTEE on August 2, 2023.  HOLEWINSKI was in attendance for this meeting and voted to revoke PLAINTIFFS' ARP.[3]

109. The ARP revocation is currently pending appeal with the Oneida County Board of Adjustment.

110. The COUNTY COMMITTEE is currently considering PLAINTIFFS' new CUP application.

111. On or about August 25, 2023, JENNRICH sent ZONING DEPARTMENT employees into Minocqua to investigate ordinance violations because MBC has been publicly announcing that the COUNTY has been targeting MBC with enforcement actions while allowing other businesses to openly violate COUNTY ordinances.

---

[3]https://www.wortfm.org/minocqua-brewing-company-owner-says-brewpub-shuttered-over-political-vendetta/

112.   PLAINTIFFS directed JENNRICH to violating businesses, who then directed JENNRICH to other violating businesses.  The investigation found 12 businesses openly violating COUNTY ordinances in downtown Minocqua.  Each of these 12 businesses has been openly violating COUNTY ordinances in downtown Minocqua during the relevant period with the apparent consent of the COUNTY, which maintains a ZONING DEPARTMENT office mere blocks from downtown Minocqua.  See Exhibit K, JENNRICH Email RE Ordinance Enforcement.

113.   Upon information and belief, the TOWN knew that these 12 other businesses were violating COUNTY ordinances and chose not to report, harass, or try and shut them down.

## FIRST CLAIM FOR RELIEF
**Violation of Plaintiffs Rights Under the First Amendment—Retaliation Against Protected Speech and Activities (42 U.S.C. § 1983)**
**(AGAINST THE TOWN OF MINOCQUA, HARTZHEIM, FRICKE, HEIL, PETERSON, THOMPSON and DOES 3-10)**

114.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 113 of this Complaint with the same force and effect as if fully set forth herein.

115.   PLAINTIFFS had a cognizable right under the First Amendment to the United States Constitution as applied to municipal actors by the Fourteenth Amendment to the United States Constitution to freely speak and engage in political activity.

DEFENDANTS repeatedly violated that right over the course of a multiyear campaign of unconstitutional retaliation against PLAINTIFFS for their constitutionally protected activities.

116.  From 2016-2020, BANGSTAD operated the Minocqua Brewing Company Inc., in downtown Minocqua and was provided with a significant number of parking space waivers to allow him to operate.  BANGSTAD also was allowed to use TOWN owned parking spaces for his business, and never had any issues or problems with the TOWN, TOWN BOARD, TOWN COMMISSION, and/or HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, or DOES 3-10.

117.  In 2020, BANGSTAD became significantly more politically active and vocal.  He publicly espoused left-wing viewpoints, plastered his building with signs for Democratic political candidates, openly criticized the TOWN's response to the COVID-19 pandemic, and ran for public office as a Democrat.

118.  BANGSTAD has also regularly and publicly criticized HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, the TOWN, the TOWN BOARD, and the TOWN COMMISSION, often using the Minocqua Brewing Company Facebook page, which currently has over 80,000 followers.[4]

---

[4] https://www.facebook.com/MBCBrews

119. BANGSTAD's political activity and speech was protected by the First Amendment to the United States Constitution as applied to municipal actors by the Fourteenth Amendment to the United States Constitution.

120. BANGSTAD's constitutionally protected political activity drew the ire of HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON, DOES 3-10, the TOWN, the TOWN BOARD, and the TOWN COMMISSION.  HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and DOES 3-10 have used their positions of power to retaliate against PLAINTIFFS for their progressive political advocacy ever since.

121. HARTZHEIM, HEIL, and THOMPSON are outspoken conservatives and/or Republicans and upon information and belief, consider themselves political adversaries of BANGSTAD.

122. THOMPSON is and was, during relevant times, a member of the Facebook hate group "We Love You Kirk." See Exhibit C.

123. HEIL is and was, during relevant times, a member of the Facebook hate group "We Love You Kirk." See Exhibit D.

124. "We Love You Kirk" is a right-wing Facebook hate group that publishes daily attacks against BANGSTAD, MBC, and their progressive political advocacy. See Exhibit E.

125. HARTZHEIM mentioned that he was concerned that BANGSTAD would place constitutionally protected political signs on the MBC tap room during the September 14, 2021, TOWN COMMISSION meeting.

126. The TOWN, HARTZHEIM, FRICKE, HEIL, THOMPSON, and DOES 3-10 wrote the ARP to forbid PLAINTIFFS from having outdoor displays and signage in order to prevent PLAINTIFFS from placing progressive political signs on the outside of the MBC tap room. See Exhibits F and G.

127. BANGSTAD did not suffer any injuries or deprivations at the hands of HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, DOES 3-10, the TOWN, the TOWN BOARD, or the TOWN COMMISSION until after he began his vocal political activism.

128. HARTZHEIM, FRICKE, PETERSON, HEIL, and THOMPSON's behavior has made their intention to punish PLAINTIFFS for espousing progressive political viewpoints in the Town of Minocqua clear.

129. As a direct result of PLAINTIFFS' constitutionally protected political activity, PLAINTIFFS have suffered numerous deprivations and injuries at the hands of HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, DOES 3-10 and the TOWN.

130. HARTZHEIM, HEIL, FRICKE, PETERSON, and THOMPSON's refusal to recommend that PLAINTIFFS receive the same parking space exemptions that every other business in downtown Minocqua has received was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in direct violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States. See Exhibit L, Letter to COUNTY COMMITTEE from Chris Naumann, and Exhibit B.

131. HARTZHEIM, HEIL, FRICKE, and THOMPSON's demand that PLAINTIFFS' ARP forbid outdoor displays and signage was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in direct violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States. See Exhibits F and G.

132.   HARTZHEIM,   FRICKE,   PETERSON,   HEIL,   and   THOMPSON's
recommendation to deny both of PLAINTIFFS' CUP applications was in
retaliation for PLAINTIFFS' constitutionally protected political activity and
speech and in violation of the First Amendment to the Constitution of the United
States as applied to municipal actors by the Fourteenth Amendment to the
Constitution of the United States.  See Exhibits C and D.

133.   HARTZHEIM, FRICKE, PETERSON, HEIL, and THOMPSON's attempts to
prevent the MBC tap room at 329 East Front Street from opening based on
fabricated authority were in retaliation for PLAINTIFFS' constitutionally
protected political activity and speech and in violation of the First Amendment to
the Constitution of the United States as applied to municipal actors by the
Fourteenth Amendment to the Constitution of the United States.  See Exhibit H.

134.   HARTZHEIM, HEIL, FRICKE, PETERSON, and THOMPSON's attempts to
enforce the conditions of PLAINTIFFS' ARP without any authority to do so were
in retaliation for PLAINTIFFS' constitutionally protected political activity and
speech and in violation of the First Amendment to the Constitution of the United
States as applied to municipal actors by the Fourteenth Amendment to the
Constitution of the United States. See Exhibits H and I.

135.   HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON, and/or DOES 3-10's campaign of harassment and intimidation whereby they regularly reported PLAINTIFFS for violations of the conditions of their ARP, while allowing other similarly situated businesses to engage in identical activity, was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States.  See Exhibit K.

136.   HARTZHEIM's use of his position of authority to influence the ZONING DEPARTMENT staff and interfere with PLAINTIFFS' ARP and CUP applications was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States.  See Exhibit M, Email to HARTZHEIM RE Enforcement Actions against MBC.

137.   The intent of the DEFENDANTS to punish progressive political activity was clear and their retaliatory actions have been both brutal and effective.

138.   DEFENDANTS' conduct is also likely to have a profound and lasting chilling effect on progressive political activity within the Town of Minocqua for years to

come as outspoken progressives and/or critics of the TOWN are clearly punished by the TOWN for their protected speech and political activities.

139. HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and DOES 3-10 were at all times relevant to this action acting under the color of law.

140. As a result of the unconstitutional conduct of HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and DOES 3-10, PLAINTIFFS' business has suffered and continues to suffer, and its beverage sales have been greatly reduced. PLAINTIFFS were also forced to hire several attorneys to try and better facilitate the zoning application process, pay thousands of dollars in unnecessary application fees, lease a second location, and pay an architect for multiple site and building redesigns.

141. HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON, and DOES 3-10 are liable for PLAINTIFFS' injuries because they were integral participants in the unconstitutional retaliation against PLAINTIFFS, or because they were aware of the unconstitutional retaliation by their codefendants and failed to intervene to prevent said unconstitutional retaliation.

142. PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

143. PLAINTIFFS further seek an injunction enjoining the TOWN, TOWN BOARD, TOWN COMMISSION, HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON, and/or DOES 3-10 from continuing to retaliate against the PLAINTIFFS in the future based on PLAINTIFFS' political statements, opinions, and/or beliefs.

144. The unconstitutional conduct of HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON, and DOES 3-10 was and continues to be willful, wanton, malicious, and done with reckless disregard for the rights of PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS.

145. PLAINTIFFS also seek attorney fees under 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF
**Violation of Plaintiffs Rights Under the First Amendment—Retaliation Against Protected Speech and Activities (42 U.S.C. § 1983)
(AGAINST THE COUNTY OF ONEIDA, HOLEWINSKI, JENNRICH, TROSKEY and ROES 1-10)**

146. PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 145 of this Complaint with the same force and effect as if fully set forth herein.

147. PLAINTIFFS had a cognizable right under the First Amendment to the United States Constitution as applied to municipal actors by the Fourteenth Amendment

to the United States Constitution to freely speak and engage in political activity. DEFENDANTS repeatedly violated that right over the course of a multiyear campaign of unconstitutional retaliation against PLAINTIFFS for their constitutionally protected activities.

148. From 2016-2020, BANGSTAD operated the Minocqua Brewing Company Inc., in downtown Minocqua and was provided with a significant number of parking space waivers to allow him to operate.  BANGSTAD never had any issues or problems with the COUNTY, COUNTY BOARD, COUNTY COMMITTEE, ZONING DEPARTMENT, and/or HOLEWINSKI, JENNRICH, TROSKEY, or ROES 1-10.

149. In 2020, BANGSTAD became significantly more politically active and vocal.  He publicly espoused left-wing viewpoints and plastered his building with signs for Democratic political candidates, including a very large Biden presidential sign.

150. In direct retaliation against BANGSTAD's placement of the large Biden sign and in violation of the rights secured to BANGSTAD by the First Amendment to the United States Constitution the COUNTY, the ZONING DEPARTMENT, and JENNRICH began an enforcement action against BANGSTAD.  See Exhibit N, Ordinance Enforcement Letter RE Biden Sign.

151. BANGSTAD used his large social media following to fight back and openly criticized the COUNTY, ZONING DEPARTMENT, and JENNRICH for trying to violate his rights under the First Amendment to the United States Constitution.

152. At no point during the 2020 election cycle did the COUNTY, the ZONING DEPARTMENT, or JENNRICH attempt to take any enforcement action against any of the equally large Trump signs located in the County of Oneida.

153. BANGSTAD has also regularly and publicly criticized the COUNTY, the COUNTY BOARD, the COUNTY COMMITTEE, HOLEWINSKI, and JENNRICH, often using the Minocqua Brewing Company Facebook page, which currently has over 80,000 followers.

154. BANGSTAD's political activities and critiques of the COUNTY were and continue to be, protected by the First Amendment to the United States Constitution as applied to municipal actors by the Fourteenth Amendment to the United States Constitution.

155. BANGSTAD's constitutionally protected political activity, including but not limited to criticizing the COUNTY and placing a very large Biden sign in downtown Minocqua, drew the ire of the COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and ROES 1-10, and the COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10 have used their positions of power

to retaliate against PLAINTIFFS for their criticism and progressive political advocacy ever since.  See Exhibit O, Email RE Preventing MBC from Displaying Political Signs and Exhibit P, MBC ARP Conditions.

156.  HOLEWINSKI is an outspoken conservative and/or Republican and upon information and belief, considers himself a political adversary of BANGSTAD. In fact, HOLEWINSKI is a known supporter of Republican Rob Swearingen, who BANGSTAD ran against for State Assembly. See Exhibit J (showing a post from Swearingen's website with a picture of him with Holewinski).

157.  JENNRICH and/or the ZONING DEPARTMENT placed a condition in PLAINTIFFS' ARP that MBC have no outdoor "displays or signage".  County Ordinance 9.26 (3) states that businesses operating under an ARP may not have "outdoor operations" but does not mention displays or signage.  Upon information and belief, that language was included in PLAINTIFFS' ARP because of the Biden sign incident and was intended to intimidate and silence PLAINTIFFS.  See Exhibits O and P.

158.  HOLEWINSKI has publicly mentioned PLAINTIFFS' constitutionally protected signage as a concern in COUNTY COMMITTEE meetings.

159.  BANGSTAD did not suffer any injuries or deprivations at the hands of COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, or ROES 1-10 until after he began his vocal political activism.

160.  The COUNTY, HOLEWINSKI, and JENNRICH's behavior has made their intention to punish PLAINTIFFS for espousing progressive political viewpoints and/or criticisms of the COUNTY clear.

161.  As a direct result of PLAINTIFFS' constitutionally protected political activity, PLAINTIFFS have suffered numerous deprivations and injuries at the hands of the COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and ROES 1-10.

162.  The ZONING DEPARTMENT and JENNRICH's decision to include the prohibition on outdoor "displays and signage" as a condition of PLAINTIFFS' ARP was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and is in direct violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States. See Exhibits O and P.

163.  The COUNTY and HOLEWINSKI's refusal to grant PLAINTIFFS the same parking space exemptions that every other business in downtown Minocqua has received was in retaliation for PLAINTIFFS' constitutionally protected political

activity and speech and is in direct violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States. See Exhibit L.

164.  The COUNTY and HOLEWINSKI's decision to deny PLAINTIFFS' first CUP application was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States.

165.  The COUNTY and HOLEWINSKI's decision to intentionally delay PLAINTIFFS' first CUP application was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States.

166.  The citations issued to MBC that were not issued to similarly situated businesses engaging in identical conduct were issued in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States.  See Exhibit K.

167.  The DEFENDANTS' intent to punish criticism of the COUNTY and/or progressive political activity was clear, and their retaliatory actions have been both brutal and effective.

168.  DEFENDANTS' conduct is also likely to have a profound and lasting chilling effect on progressive political activity within the COUNTY for years to come as outspoken progressives and/or critics of the COUNTY are clearly punished by the COUNTY for their protected speech and political activities.

169.  HOLEWINSKI, JENNRICH, TROSKEY, and ROES 1-10 were at all times relevant to this action acting under the color of law.

170.  As a result of the unconstitutional conduct of the COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and ROES 1-10, PLAINTIFFS' business has suffered and continues to suffer, and its beverage sales have been greatly reduced. PLAINTIFFS were also forced to hire several attorneys to try and better facilitate the zoning application process, pay thousands of dollars in unnecessary application fees, lease a second location, and pay an architect for multiple site and building redesigns.

171.  The COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and ROES 1-10 are liable for PLAINTIFFS' injuries because they were integral participants in the unconstitutional retaliation against PLAINTIFFS, or because they were aware of

the unconstitutional retaliation by their codefendants and failed to intervene to prevent said unconstitutional retaliation.

172.   PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

173.   PLAINTIFFS seek an injunction enjoining the COUNTY, COUNTY BOARD, COUNTY COMMITTEE, the ZONING DEPARTMENT, HOLEWINSKI, JENNRICH, TROSKEY, and ROES 1-10, from relying on or otherwise considering any recommendations or proposals made by the TOWN related in any way to PLAINTIFFS when such recommendations or proposals involve or involved any of the TOWN officials named as DEFENDANTS in this complaint.

174.   PLAINTIFFS further seek an injunction enjoining the COUNTY, COUNTY BOARD, COUNTY COMMITTEE, the ZONING DEPARTMENT, HOLEWINSKI, JENNRICH, TROSKEY, and ROES 1-10, from continuing to retaliate against the PLAINTIFFS in the future based on PLAINTIFFS' political statements, opinions, and/or beliefs.

175.   The unconstitutional conduct of HOWELINSKI, JENNRICH, and ROES 1-10 was and continues to be willful, wanton, malicious, and done with reckless disregard for the rights of PLAINTIFFS and therefore warrants the imposition of

exemplary and punitive damages as to HOWELINSKI, JENNRICH and ROES 1-10.

176. PLAINTIFFS also seek attorney fees under 42 U.S.C. § 1988.

<div align="center">

**THIRD CLAIM FOR RELIEF**
**Fourteenth Amendment — Procedural Due Process (42 U.S.C. § 1983)**
**(AGAINST THE TOWN OF MINOCQUA, HARTZHEIM, FRICKE,**
**PETERSON, HEIL, THOMPSON, and DOES 3-10)**

</div>

177. PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 176 of this Complaint with the same force and effect as if fully set forth herein.

178. PLAINTIFFS had a cognizable right under the Fourteenth Amendment to the U.S. Constitution to procedural due process during the zoning application process.

179. The DEFENDANTS' role in the Oneida County zoning process in which they make recommendations on zoning applications is quasi-judicial in nature.

180. A fundamental principle of procedural due process is a fair hearing in front of an impartial tribunal. In the context of zoning issues, the Fourteenth Amendment requires that the committee responsible for rendering zoning decisions must be impartial and unbiased.

181. The Fourteenth Amendment requirement for an impartial tribunal is so deeply ingrained in the principles of due process that even the mere threat of bias during a zoning hearing constitutes a violation of an applicant's right to due process.

182. DEFENDANTS' conduct over the relevant time period demonstrates a clear bias and a lack of impartiality.

183. THOMPSON, as a Supervisor for the TOWN, voted on zoning recommendations concerning PLAINTIFFS while a member of the right-wing Facebook hate group "We Love You Kirk," violating PLAINTIFFS' right to due process secured to them by the Fourteenth Amendment to the Constitution of the United States.   See Exhibits D and I.

184. HEIL, as a Supervisor for the TOWN, voted on zoning recommendations concerning PLAINTIFFS while a member of the right-wing Facebook hate group "We Love You Kirk," violating PLAINTIFFS' right to due process secured to them by the Fourteenth Amendment to the Constitution of the United States.

185. PLAINTIFFS had no hope of receiving a fair hearing in front of an impartial tribunal when two of the members of the tribunal were also members of a Facebook hate group dedicated to PLAINTIFFS.  See Exhibits D and I.

186.   The conduct and decisions made by the TOWN, the TOWN BOARD, the TOWN
COMMISSION, HARTZHEIM, HEIL, PETERSON, FRICKE, THOMPSON,
and DOES 3-10 also demonstrate a clear lack of impartiality.

187.   The TOWN, HARTZHEIM, HEIL, PETERSON, FRICKE, THOMPSON, and
DOES 3-10 denied PLAINTIFFS the same parking space exemption
recommendation that was provided to every other business in downtown
Minocqua, demonstrating a clear bias and lack of impartiality. See Exhibit B.

188.   The TOWN, HARTZHEIM, HEIL, PETERSON, FRICKE, THOMPSON, and/or
DOES 3-10 have promulgated a policy of regularly reporting PLAINTIFFS for
violations of the conditions of their ARP, while allowing other similarly situated
businesses to engage in identical activity, demonstrating a clear bias and lack of
impartiality.  See Exhibit K.

189.   The TOWN, HARTZHEIM, HEIL, PETERSON, FRICKE, THOMPSON, and
DOES 3-10 have continually attempted to enforce the conditions of
PLAINTIFFS' ARP without any authority to do so, demonstrating a clear bias
and lack of impartiality. See Exhibits H and I.

190.   The conduct of DEFENDANTS and the disparate treatment of PLAINTIFFS can
only be rationalized as the result of an inherent bias against PLAINTIFFS and it
continues to this day. See Exhibits B and K.

191. PLAINTIFFS have not received the due process guaranteed to them under the Fourteenth Amendment to the Constitution of the United States at any zoning hearing in front of the TOWN BOARD or the TOWN COMMISSION, because PLAINTIFFS have always been in front of a biased tribunal.

192. The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and DOES 3-10 were at all times relevant to this action acting under the color of law.

193. As a result of the unconstitutional conduct of the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and DOES 3-10, PLAINTIFFS' business has suffered and continues to suffer, and its beverage sales have been greatly reduced. PLAINTIFFS were also forced to hire several attorneys to try and better facilitate the zoning application process, lease a building to open a tap room, pay thousands of dollars in unnecessary application fees, and pay an architect for multiple site and building redesigns.

194. PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

195. PLAINTIFFS additionally seek a declaration that every zoning recommendation made by the TOWN BOARD or TOWN COMMISSION related to the Minocqua Brewing Company with the input of HARTZHEIM, HEIL, FRICKE, PETERSON, and THOMPSON, during the relevant time period was made in

violation of PLAINTIFFS' right to due process secured to them by the Fourteenth Amendment to the Constitution of the United States.

196.  PLAINTIFFS further seek an injunction enjoining the TOWN, BOARD, COMMISSION, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 from treating BANGSTAD and MBC differently because of their political statements, views, and beliefs and from otherwise making any further zoning recommendations to the COUNTY related to BANGSTAD or MBC without an impartial tribunal.

197.  PLAINTIFFS finally seek attorney fees under 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF
### Fourteenth Amendment — Procedural Due Process (42 U.S.C. § 1983)
### (AGAINST THE COUNTY OF ONEIDA, HOLEWINSKI, and ROES 1-10)

198.  PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 197 of this Complaint with the same force and effect as if fully set forth herein.

199.  PLAINTIFFS had a cognizable right under the Fourteenth Amendment to the U.S. Constitution to procedural due process during the zoning application process.

200.  HOLEWINSKI's role in the Oneida County zoning process in which he votes on zoning applications is quasi-judicial in nature.

201.  A fundamental principle of procedural due process is a fair hearing in front of an impartial tribunal. In the context of zoning issues, the Fourteenth Amendment requires that the committee responsible for rendering zoning decisions must be impartial and unbiased.

202.  The Fourteenth Amendment requirement for an impartial tribunal is so deeply ingrained in the principles of due process that even the mere threat of bias during a zoning hearing constitutes a violation of an applicant's right to due process.

203.  HOLEWINSKI's conduct over the relevant time period demonstrates a clear bias and a lack of impartiality.

204.  HOLEWINSKI, as Chairman of the COUNTY COMMITTEE, voted to deny PLAINTIFFS' CUP and revoke PLAINTIFFS' ARP after voicing his concerns about PLAINTIFFS' protected political activity on the property, i.e., hanging political signs on and around the business.  See Exhibit Q, COUNTY COMMITTEE meeting minutes 4/19/23.

205.   HOLEWINSKI, as Chairman of the COUNTY COMMITTEE, voted to revoke PLAINTIFFS' ARP after announcing that he would intentionally slow the CUP application process and then intentionally slowing the process, in order to give the COUNTY more time to revoke PLAINTIFFS' ARP.

206.   HOLEWINSKI, as Chairman of the COUNTY COMMITTEE, voted to revoke PLAINTIFFS' ARP after emailing the COUNTY COMMITTEE suggesting they revoke PLAINTIFFS' ARP, denying PLAINTIFFS a fair tribunal at their ARP revocation hearing.  See Exhibit J.

207.   HOLEWINSKI, as Chairman of the COUNTY COMMITTEE, voted to deny PLAINTIFFS' CUP after announcing that he would intentionally slow the CUP application process, and then he intentionally slowed the application process.  See Exhibit Q.

208.   The conduct and decisions made by the COUNTY COMMITTEE and HOLEWINSKI demonstrate a clear bias and lack of impartiality.

209.   PLAINTIFFS have not received the due process guaranteed to them under the Fourteenth Amendment to the Constitution of the United States at any zoning hearing in front of HOLEWINSKI or the COUNTY COMMITTEE because PLAINTIFFS were always in front of a biased tribunal.

210.   The COUNTY, HOLEWINSKI, and ROES 1-10 were at all times relevant to this action acting under the color of law.

211.   As a result of the unconstitutional conduct of the COUNTY, HOLEWINSKI, and ROES 1-10, PLAINTIFFS' business has suffered and continues to suffer, and its beverage sales have been greatly reduced.  PLAINTIFFS were also forced to hire

several attorneys to try and better facilitate the zoning application process, lease a building to open a tap room, pay thousands of dollars in unnecessary application fees, and pay an architect for multiple site and building redesigns.

212.  PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

213.  PLAINTIFFS additionally seek a declaration that every zoning decision made by the COUNTY COMMITTEE related to the Minocqua Brewing Company with the input of HOLEWINSKI during the relevant time period was made in violation of PLAINTIFFS' right to due process secured to them by the Fourteenth Amendment to the Constitution of the United States.

214.  PLAINTIFFS seek an injunction enjoining the COUNTY, the COUNTY BOARD, COUNTY COMMITTEE, the ZONING DEPARTMENT, HOLEWINSKI, JENNRICH, TROSKEY, and ROES 1-10, from relying on or otherwise considering any recommendations or proposals made by the TOWN related in any way to PLAINTIFFS when such recommendations or proposals involve or involved any of the TOWN officials named as DEFENDANTS in this complaint.

215. PLAINTIFFS further seek an injunction enjoining the COUNTY, HOLEWINSKI, and/or ROES 1-10 from treating BANGSTAD and MBC differently because of their political statements, views, and beliefs.

216. PLAINTIFFS also seek attorney fees under 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF
### Fourteenth Amendment—Equal Protection (42 U.S.C. § 1983)
### (AGAINST THE TOWN OF MINOCQUA, HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON and DOES 3-10)

217. PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 216 of this Complaint with the same force and effect as if fully set forth herein.

218. PLAINTIFFS have a cognizable right under the Fourteenth Amendment to the United States Constitution to equal protection under the law.

219. A fundamental principle of equal protection under the Fourteenth Amendment is that similarly situated individuals must receive equal treatment at the hands of government actors.

220. In the context of zoning issues, the Fourteenth Amendment requires that a municipality may not irrationally and arbitrarily discriminate against a natural person or business even if that natural person or business is not a member of a suspect class.

221.   PLAINTIFFS suffered disparate treatment at the hands of the TOWN, the TOWN

BOARD, the TOWN COMMISSION, HARTZHEIM, FRICKE, PETERSON,

HEIL, THOMPSON, and/or DOES 3-10.

222.   The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and

DOES 3-10 refused to recommend that PLAINTIFFS receive the same parking

space waiver recommendation that was provided to every other business in

downtown Minocqua that recently applied for an ARP or CUP. See Exhibit B.

223.   In 2023, the Yacht Club, a restaurant less than two miles south of the MBC tap

room received a recommendation for 30 parking space exemptions when they

applied for their CUP.

224.   In 2022, Imaginuity, a toy store located two blocks from the MBC tap room

received a recommendation for 7 parking space exemptions when they applied

for their ARP.

225.   In 2022, Bartangos Cigar Bar located one block from the MBC tap room received

a recommendation for 16 parking space exemptions when they applied for their

ARP.

226.  In 2022, Isabella's Boutique, a clothing store located one block from the MBC tap room received a recommendation for 6 parking spot exemptions when they applied for their ARP.

227.  In 2021, Oakfire Pizza, a restaurant located less than three blocks from the MBC tap room received a recommendation for 43 parking space exemptions when they applied for their ARP.

228.  In 2021, Wild Turkey, a restaurant located only one block from the MBC tap room received a recommendation for 32 parking space exemptions when they applied for their ARP.

229.  In 2020, T & T Auto Service, a mechanics shop located three blocks from the MBC tap room received a recommendation for 5 parking space exemptions when they applied for their ARP.

230.  In 2020, Café Sonder, a small coffee shop located four blocks from the MBC taproom received a recommendation for 12 parking space exemptions when they applied for their ARP.  Café Sonder is also currently using a former parking lot for an outdoor dining area, and they serve alcohol.  Further, their ARP did not require them to provide a single parking space.

231. Café Sonder is situated identically to PLAINTIFFS and received a recommendation for the exact ARP conditions that PLAINTIFFS requested but were denied.

232. The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 have also promulgated a policy of regularly reporting PLAINTIFFS for violations of the conditions of their ARP while allowing other similarly situated businesses to engage in identical activity unharassed.

233. The TOWN's policy of selectively reporting alleged ordinance violations has been and continues to be targeted, discriminatory, and intentional and violates PLAINTIFFS' right to equal protection secured to them by the Fourteenth Amendment to the United States Constitution. See Exhibit K.

234. Downtown Minocqua is zoned B-1 and B-2.

235. Oneida County Ordinance 9.26(3) instructs that businesses operating under an ARP in B-1 or B-2 zoning districts may not have outdoor operations.

236. Yet Café Sonder is located in downtown Minocqua only 4 blocks south of the MBC Tap room and has outdoor operations.

237. Oakfire Pizza is also located in downtown Minocqua less than 3 blocks from the MBC Tap room and has outdoor operations.

238. The ARPs for Oakfire Pizza and Café Sonder are controlled by Oneida County Ordinance 9.26(3).

239. Oakfire Pizza and Café Sonder both have outdoor seating and dining but have never been reported by the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 for violating the condition of their ARP.

240. HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 were intimately involved in the ARP and CUP recommendations for the Yacht Club, Imaginuity, Bartango's Cigar Bar, Isabellas Closet, Wild Turkey, T & T Auto Service, Oakfire Pizza and Café Sonder.  Similarly, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 were aware that they granted businesses similarly situated to MBC every parking exemption they requested while denying MBC their requested parking exemptions.  See Exhibit B.

241. HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON and/or DOES 3-10 were similarly aware that Oakfire Pizza and Café Sonder were violating the conditions of their ARPs by allowing outdoor dining when HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON and/or DOES 3-10 filed reports with Oneida County against PLAINTIFFS for allowing outdoor operations.

242. The disparate treatment suffered by PLAINTIFFS was intentional, completely arbitrary, had no expressed or apparent rational basis, and was the result of the DEFENDANTS' bias against PLAINTIFFS as demonstrated by a long and intentional campaign of discrimination, harassment, and intimidation against PLAINTIFFS.  See Exhibits H, K, and M.

243. Upon information and belief, no other business in the Town of Minocqua over the last three years has suffered the kind of treatment that PLAINTIFFS have suffered at the hands of DEFENDANTS.  See Exhibit K.

244. DEFENDANTS have repeatedly refused to provide PLAINTIFFS with equal protection under the law as required by the Fourteenth Amendment to the United States Constitution.  See Exhibit K.

245. At all times relevant to this Complaint the DEFENDANTS were acting under the color of law.

246. As a result of the unconstitutional conduct of HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON, and DOES 3-10, PLAINTIFFS' business has suffered and continues to suffer, and its beverage sales have been greatly reduced. PLAINTIFFS have also been forced to hire several attorneys to try and better facilitate the zoning application process, pay thousands of dollars in unnecessary

application fees, lease a building to operate their tap room and pay an architect for multiple site and building redesigns.

247.   The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and DOES 3-10 are liable for PLAINTIFFS' injuries because they were integral participants in the violations of PLAINTIFFS right to equal protection under the Fourteenth Amendment to the United States Constitution, or because they were aware of the unconstitutional conduct by their codefendants and failed to intervene to prevent the constitutional violations.

248.   The conduct of HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and DOES 3-10 was willful, wanton, malicious, and done with reckless disregard for the rights or PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS.

249.   PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

250.   PLAINTIFFS further seek a declaration that DEFENDANTS violated PLAINTIFFS' right to equal protection secured to them by the Fourteenth Amendment to the Constitution of the United States by refusing to provide PLAINTIFFS with a recommendation for approval of their ARP with more than one parking space waiver.

251.   PLAINTIFFS additionally seek an injunction enjoining the TOWN, TOWN

BOARD, TOWN COMMISSION, HARTZHEIM, FRICKE, PETERSON, HEIL,

THOMPSON, and/or DOES 3-10 from continuing their unconstitutional activity

and from making any further zoning recommendations to Oneida County related

to BANGSTAD or MBC that are based on unequal treatment.

252.   PLAINTIFFS finally seek attorney fees under 42 U.S.C. § 1988.

## SIXTH CLAIM FOR RELIEF
**Fourteenth Amendment—Equal Protection (42 U.S.C. § 1983)**
**(AGAINST THE COUNTY OF ONEIDA, HOLEWINSKI JENNRICH,**
**and ROES 1-10)**

253.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1

through 252 of this Complaint with the same force and effect as if fully set forth

herein.

254.   PLAINTIFFS have a cognizable right under the Fourteenth Amendment to the

United States Constitution to equal protection under the law.

255.   A fundamental principle of equal protection under the Fourteenth Amendment is

that similarly situated individuals must receive equal treatment at the hands of

government actors.

256.   In the context of zoning issues, the Fourteenth Amendment requires that a

municipality may not irrationally and arbitrarily discriminate against a natural

person or business even if that natural person or business is not a member of a suspect class.

257.   PLAINTIFFS suffered disparate treatment at the hands of the COUNTY, the COUNTY COMMITTEE, the ZONING DEPARTMENT, HOLEWINSKI, JENNRICH, and/or ROES 1-10.  See Exhibit K.

258.   The COUNTY, COUNTY COMMITTEE, the ZONING DEPARTMENT, JENNRICH, HOLEWINSKI, and/or ROES 1-10 refused to provide PLAINTIFFS with the same parking space waiver that has been provided to every other business in downtown Minocqua that has recently applied for an ARP.  See Exhibit B.

259.   In 2023, the Yacht Club, a restaurant less than two miles south of the MBC tap room received 30 parking space exemptions when they applied for their CUP.

260.   In 2022, Imaginuity, a toy store located two blocks from the MBC tap room received 7 parking space exemptions when they applied for their ARP.

261.   In 2022, Bartangos Cigar Bar located one block from the MBC tap room received 16 parking space exemptions when they applied for their ARP.

262.   In 2022, Isabella's Boutique, a clothing store located one block from the MBC tap room received 6 parking spot exemptions when they applied for their ARP.

263. In 2021, Oakfire Pizza, a restaurant located less than three blocks from the MBC tap room received 43 parking space exemptions when they applied for their ARP.

264. In 2021, Wild Turkey, a restaurant located only one block from the MBC tap room received 32 parking space exemptions when they applied for their ARP.

265. In 2020, T & T Auto Service, a mechanics shop located three blocks from the MBC tap room received 5 parking space exemptions when they applied for their ARP.

266. In 2020, Café Sonder, a small coffee shop located four blocks from the MBC taproom received 12 parking space exemptions when they applied for their ARP. Café Sonder is also currently using a former parking lot for an outdoor dining area, and they serve alcohol. Further, their ARP did not require them to provide a single parking space.

267. Café Sonder is situated identically to PLAINTIFFS and received the exact ARP conditions that PLAINTIFFS requested but were denied.

268. In 2022, Rocky Reef Brewery, a brewery located two miles north of the MBC tap room received 33 parking space waivers, and zoning permission from the COUNTY to turn their parking lot into a beer garden when they applied for their CUP.

269.   Rocky Reef Brewery is situated identically to PLAINTIFFS and received the necessary parking space waivers to turn their parking lot into a beer garden that PLAINTIFFS were refused.

270.   The COUNTY, the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10 have also promulgated a policy of citing PLAINTIFFS for violations of the conditions of their ARP while allowing other similarly situated businesses to engage in identical activity unharassed.  See Exhibit K.

271.   The COUNTY's policy of selective enforcement of alleged ordinance violations has been and continues to be intentional, targeted at PLAINTIFFS, and discriminatory and it violates PLAINTIFFS' right to equal protection secured to them by the Fourteenth Amendment to the United States Constitution.   See Exhibits B, K, N and O.

272.   Downtown Minocqua is zoned B-1 and B-2.

273.   Oneida County Ordinance 9.26(3) instructs that businesses operating under an ARP in B-1 or B-2 zoning districts may not have outdoor operations.

274.   Yet Café Sonder is located in downtown Minocqua only 4 blocks south of the MBC Tap room and has outdoor operations.

275. Oakfire Pizza is also located in downtown Minocqua less than 3 blocks from the MBC Tap room and has outdoor operations.

276. The ARPs for Oakfire Pizza and Café Sonder are controlled by Oneida County Ordinance 9.26(3).

277. Oakfire Pizza and Café Sonder both have outdoor seating and dining but have never been cited by the COUNTY, the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10 for violating the condition of their ARP.

278. The COUNTY, the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10 were intimately involved in the ARP approvals for Imaginuity, Bartango's Cigar Bar, Isabellas Closet, Wild Turkey, T & T Auto Service, Oakfire Pizza, and Café Sonder. The COUNTY, the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10 were aware that they granted businesses similarly situated to MBC every parking exemption they requested while denying MBC its requested parking exemptions.  See Exhibit B.

279. The COUNTY, the ZONING DEPARTMENT, HOLEWINSKI, JENNRICH, and/or ROES 1-10 were similarly aware that Oakfire Pizza and Café Sonder were violating the conditions of their ARPs by allowing outdoor dining when they cited PLAINTIFFS for allowing outdoor operations.

280.   JENNRICH   and   the   COUNTY   further   took   enforcement   action   against PLAINTIFFS for their uncovered dumpsters in retaliation for Plaintiffs' protected political activities.

281.   On   June   23,   2023,   for   example,   an   investigator   from   the   ZONING DEPARTMENT went to 329 East Front Street to investigate PLAINTIFFS' dumpsters that were not visually protected by a fence or via some other method. The investigator took pictures of PLAINTIFFS' dumpsters but, upon information and belief, did not take pictures of any of the other visible non-visually protected dumpsters at various other business that were visible from MBC's own parking lot, where its dumpsters were located.   See Exhibit R, Email RE Oakfire Pizza and Wild Turkey Dumpsters.

282.   On June 23, 2023, for example, the investigator a 329 East Front Street would have also seen uncovered dumpsters at Wild Turkey and Oakfire Pizza, among other places.   Upon information and belief, no enforcement actions were taken against  Wild  Turkey  or  Oakfire  Pizza  for  their  visible  dumpsters  until PLAINTIFFS pointed out DEFENDANTS' failure to uniformly enforce at a COUNTY COMMITTEE meeting.  See Exhibit R.

283.   The disparate treatment suffered by PLAINTIFFS is intentional, completely arbitrary, has no expressed or apparent rational basis, and is the result of the

COUNTY, the ZONING DEPARTMENT, HOLEWINSKI, JENNRICH, and/or ROES 1-10's bias against PLAINTIFFS as demonstrated by a long and intentional campaign of discrimination, harassment, and intimidation against PLAINTIFFS.

284.   Upon information and belief, no other business in the Town of Minocqua over the last three years has suffered the kind of treatment that PLAINTIFFS have suffered at the hands of the COUNTY, the ZONING DEPARTMENT, JENNRICH and/or ROES 1-10.  See Exhibit K.

285.   The COUNTY, the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10 have repeatedly refused to provide PLAINTIFFS with equal protection under the law as required by the Fourteenth Amendment to the United States Constitution.

286.   At all times relevant to this Complaint the COUNTY, the ZONING DEPARTMENT, HOLEWINSKI, JENNRICH, and/or ROES 1-10 were acting under the color of law.

287.   As a result of the unconstitutional conduct of the COUNTY, the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10, PLAINTIFFS' business has suffered and continues to suffer, and its beverage sales have been greatly reduced. PLAINTIFFS have also been forced to hire several attorneys to try and better facilitate the zoning application process, pay thousands of dollars in unnecessary

application fees, lease a building to operate their tap room and pay an architect for multiple site and building redesigns.

288. The COUNTY, the ZONING DEPARTMENT, HOLEWINSKI, JENNRICH and/or ROES 1-10 are liable for PLAINTIFFS' injuries because they were integral participants in the violations of PLAINTIFFS right to equal protection under the Fourteenth Amendment to the United States Constitution, or because they were aware of the unconstitutional conduct by their codefendants and failed to intervene to prevent the constitutional violations.

289. The conduct of HOLEWINSKI, JENNRICH, and/or ROES 1-10 was willful, wanton, malicious, and done with reckless disregard for the rights or PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS.

290. PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

291. PLAINTIFFS further seek a declaration that the COUNTY, the ZONING DEPARTMENT, HOLEWINSKI, JENNRICH, and/or ROES 1-10 violated PLAINTIFFS' right to equal protection secured to them by the Fourteenth Amendment to the Constitution of the United States by refusing to provide PLAINTIFFS with more than one parking space waiver and through a campaign

of selective enforcement of Oneida County Ordinances intentionally directed at PLAINTIFFS.

292.   PLAINTIFFS additionally seek an injunction enjoining the COUNTY, the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10 from continuing their unconstitutional activity and from making any further zoning decisions related to BANGSTAD or MBC without guaranteeing that the PLAINTIFFS are provided equal protection consistent with the requirements of the Fourteenth Amendment.

293.   PLAINTIFFS finally seek attorney fees under 42 U.S.C. § 1988.

<div align="center">

**SEVENTH CLAIM FOR RELIEF**
**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**
**(Against THE TOWN OF MINOCQUA, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10)**

</div>

294.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 293 of this Complaint with the same force and effect as if fully set forth herein.

295.   Since at least 2021, the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 have deprived PLAINTIFFS of the rights and liberties secured to them by the First and Fourteenth Amendments to the United States Constitution, in that said DEFENDANTS and their supervising and

managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of PLAINTIFFS, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice:

(a)     Of enforcing Oneida County ordinances and ARP conditions using illegitimate town meetings and fabricated authority. The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 at all times material herein knew or reasonably should have known that they do not have the authority to enforce Oneida County Ordinances and ARP conditions. DEFENDANTS also reasonably knew or should have known that this policy and/or custom was going to lead to abuse and injury and was per se unconstitutional under the Fourteenth Amendment to the United States Constitution. See Exhibit H.

(b)     Of inadequately supervising, training, controlling, assigning, and disciplining town staff, elected officials, and other personnel, including HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10, who the TOWN knew or in the

exercise of reasonable care should have known would retaliate against PLAINTIFFS, for exercising their constitutional rights under the First Amendment to the United States Constitution.  See Exhibits A, B, C, D, H, I, K, L, and M.

(c)     By having and maintaining an unconstitutional policy, custom, and/or practice of using the TOWN's zoning authority and influence with the COUNTY to retaliate against citizens and businesses who espouse left-wing and/or progressive political speech, and/or criticize the TOWN.   This policy and/or custom was clearly demonstrated by the actions of HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10.   The policies, customs, and practices of the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS and/or similarly situated individuals and/or businesses; See Exhibits A, B, C, D, H, I, K, L, and M.

(d) By failing to institute appropriate policies regarding appropriate constitutional procedures and practices for zoning recommendation decisions.  This policy and/or custom was clearly demonstrated by the actions of the TOWN BOARD, the TOWN COMMISSION, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10.   The policies, customs, and practices of HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses.  See Exhibits A, B, C, D, H, I, K, L, and M.

(e) By failing to institute appropriate policies regarding constitutional procedures and practices for reporting zoning ordinance violations to the COUNTY.  This policy and/or custom was clearly demonstrated by the actions of the TOWN BOARD, TOWN COMMISSION, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10.  The policies, customs, and practices of HARTZHEIM, HEIL, FRICKE, PETERSON,

THOMPSON, and/or DOES 3-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses.  See Exhibit K.

(f)      By instituting a policy or custom whereby members of the TOWN BOARD were and are allowed to discriminate against zoning applicants due to personal or political differences.  This policy and/or custom was clearly demonstrated by the actions of the TOWN, HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON, and/or DOES 3-10.  The policies, customs, and practices of HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses.  See Exhibits A, B, C, D, H, I, K, L, and M.

296.   By reason of the aforementioned policies and practices of the DEFENDANTS, the TOWN, HARTZHEIM, FRICKE, PETERSON, HEIL, THOMPSON, and/or DOES 3-10, PLAINTIFFS have been and continue to be injured and subjected to violations of the constitutional rights secured to them under the United States Constitution.

297.   DEFENDANTS the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these DEFENDANTS condoned, tolerated, and through actions and inactions thereby ratified such policies.  Said DEFENDANTS also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of PLAINTIFFS and other individuals similarly situated.

298.   By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 have acted and continue to act with an intentional, reckless, and callous disregard for the constitutional rights of PLAINTIFFS.  The actions of HARTZHEIM, HEIL, FRICKE, PETERSON,

THOMPSON, and/or DOES 3-10 have been and continue to be willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

299.  Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by the TOWN are affirmatively linked to and have been a significantly influential force behind the injuries of PLAINTIFFS.

300.  Accordingly, DEFENDANTS the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSON, THOMPSON, and/or DOES 3-10 each are liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

301.  PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

302.  PLAINTIFFS also seek attorney fees under 42 U.S.C. § 1988.

**EIGHTH CLAIM FOR RELIEF**
**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**
**(Against THE COUNTY OF ONEIDA, HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10)**

303.  PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 302 of this Complaint with the same force and effect as if fully set forth herein.

304.   Since at least 2021, the COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10 have deprived PLAINTIFFS of the rights and liberties secured to them by the First and Fourteenth Amendments to the United States Constitution, in that said DEFENDANTS and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of PLAINTIFFS, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice:

   (a)   Of selectively enforcing Oneida County ordinances and ARP conditions against political adversaries.   The COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10. DEFENDANTS reasonably knew or should have known that this policy and/or custom was going to lead to abuse and injury and was per se unconstitutional under the First and Fourteenth Amendments to the United States Constitution.   See Exhibits A, B, K, L, M, N, O, and P.

   (b)   Of inadequately supervising, training, controlling, assigning, and disciplining town staff, elected officials, and other personnel,

including, HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10, who the COUNTY knew or in the exercise of reasonable care should have known would retaliate against the PLAINTIFFS for exercising their constitutional rights under the First Amendment to the United States Constitution.  See Exhibits A, B, K, L, M, N, O, and P.

(c) By having and maintaining an unconstitutional policy, custom, and/or practice of using the COUNTY's zoning authority to retaliate against citizens and businesses who espouse left-wing and/or progressive political viewpoints, and criticisms of the COUNTY. This policy and/or custom was clearly demonstrated by the actions of HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10. The policies, customs, and practices of JENNRICH, TROSKEY, and/or ROES 1-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS and/or similarly situated individuals and/or businesses; See Exhibits A, B, K, L, M, N, O, and P.

(d)     By failing to institute appropriate policies regarding appropriate constitutional procedures and practices for approving zoning recommendations from Oneida County municipalities.  This policy and/or custom was clearly demonstrated by the actions of the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10.  The policies, customs, and practices of the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10 were also promulgated with a reckless disregard for individual rights and the COUNTY knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses. See Exhibits A, B, C, D, K, L, M, N, O, and P.

(e)     By failing to institute appropriate policies regarding appropriate constitutional procedures and practices for enforcing county ordinances.  This policy and/or custom was clearly demonstrated by the actions of the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10.  The policies, customs, and practices of the ZONING DEPARTMENT, JENNRICH, and/or ROES 1-10 were also promulgated with a reckless disregard for individual rights and the COUNTY knew or should have known that this policy and/or

custom was going to result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses.  See Exhibits A, B, K, L, M, N, O, and P.

(f)     By instituting a policy or custom whereby members of the ZONING DEPARTMENT were and are allowed to discriminate against zoning applicants due to personal or political differences between the applicants and the COUNTY.  This policy and/or custom was clearly demonstrated by the actions of the ZONING DEPARTMENT, JENNRICH, TROSKEY, and/or ROES 1-10.  The policies, customs, and practices of the COUNTY, JENNRICH, TROSKEY, and/or ROES 1-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses.  See Exhibits A, B, K, L, M, N, O, and P.

(g)     By instituting a policy or custom whereby the ZONING DEPARTMENT selectively enforces county ordinances based exclusively on complaints while failing to ensure that ordinance

enforcement complies with the requirements of the United States Constitution.  This policy and/or custom was clearly demonstrated by the actions of the COUNTY, JENNRICH, TROSKEY, and/or ROES 1-10.  The policies, customs, and practices of the COUNTY, JENNRICH, TROSKEY, and/or ROES 1-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses. See Exhibits A, B, K, L, M, N, and O.

305.  By reason of the aforementioned policies and practices of the COUNTY, JENNRICH, TROSKEY, and/or ROES 1-10, PLAINTIFFS have been and continue to be injured and subjected to violations of the constitutional rights secured to them under the United States Constitution.

306.  The COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these DEFENDANTS condoned, tolerated, and through actions and inactions thereby ratified such policies.   Said DEFENDANTS also acted with deliberate

indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of PLAINTIFFS and other individuals similarly situated.

307. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, the COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10 have acted and continue to act with an intentional, reckless, and callous disregard for the constitutional rights of PLAINTIFFS.  The actions of the COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10 have been and continue to be willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

308. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by the COUNTY are affirmatively linked to and have been a significantly influential force behind the injuries of PLAINTIFFS.

309. Accordingly, DEFENDANTS the COUNTY, HOLEWINSKI, JENNRICH, TROSKEY, and/or ROES 1-10 each are liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

310. PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

311.   PLAINTIFFS also seek attorney fees under 42 U.S.C. § 1988.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Kirk Bangstad and the Minocqua Brewing Company LLC request entry of judgment in their favor and against DEFENDANTS THE TOWN OF MINOCQUA, MARK HARTZHEIM, SUSAN HEIL, JOHN THOMPSON, BRIAN FRICKE, ERIKA PETERSON, DOES 3-10, THE COUNTY OF ONEIDA, SCOTT HOLEWINSKI, KARL JENNRICH, TODD TROSKEY, and ROES 1-10 inclusive, as follows:

     A.    For compensatory damages under federal and state law, in the amount to be proven at trial;

     B.    For declaratory relief as outlined in the body of this Complaint;

     C.    For injunctive relief as outlined in the body of this Complaint;

     D.    For punitive damages against the individual defendants MARK HARTZHEIM, SUSAN HEIL, JOHN THOMPSON, BRIAN FRICKE, ERIKA PETERSON, SCOTT HOLEWINSKI, KARL JENNRICH, TODD TROSKEY, DOES 3-10, and ROES 1-10 in an amount to be proven at trial;

     E.    For interest;

F.   For reasonable costs of this action, court costs, and attorneys' fees; and

G.   For such other and further relief as the Court may deem just, proper, and appropriate.

DATED:  September 8, 2023

<div style="margin-left:40%">

*s/ Brian H. Potts*
Brian H. Potts, Bar No. 1060680
BPotts@perkinscoie.com
PERKINS COIE LLP
33 E Main St, Ste 201
Madison, Wisconsin 53703-3095
Telephone:  (608) 663-7460
Facsimile:   (608) 663-7499

Frederick B. Melms Esq, Bar No. 1093957
Generalcounsel@Minocquabrewingcompany.com
Minocqua Brewing Company Super PAC
PO BOX 212
Woodruff, WI 54568
Telephone:   (715) 892-3023
Facsimile:    (715) 449-4304


*Attorneys for Plaintiffs THE MINOCQUA
BREWING COMPANY LLC, and KIRK C.
BANGSTAD*

</div>