**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| THE MINOCQUA BREWING COMPANY LLC, and KIRK C. BANGSTAD,<br><br>            Plaintiffs,<br><br>    vs.<br><br>THE TOWN OF MINOCQUA, MARK HARTZHEIM, SUSAN HEIL, JOHN THOMPSON, BRIAN FRICKE, ERIKA PETERSEN, and DOES 3-10,<br><br>            Defendants. | Case No. 23-cv-578 |

**SECOND AMENDED COMPLAINT AND REQUEST FOR**
**DECLARATIVE AND INJUNCTIVE RELIEF**

PLAINTIFFS KIRK BANGSTAD and the MINOCQUA BREWING COMPANY LLC bring this Complaint against DEFENDANTS, THE TOWN OF MINOCQUA, MARK HARTZHEIM, SUSAN HEIL, JOHN THOMPSON, BRIAN FRICKE, ERIKA PETERSEN, and DOES 3-10 for their unconstitutional retaliation against PLAINTIFFS' for their protected political activity and speech in violation of the First Amendment to the United States Constitution and the Constitution of the State of Wisconsin, and for violations of PLAINTIFFS' rights to due process and equal protection pursuant to the Fourteenth Amendment to the United States Constitution.

## <u>INTRODUCTION</u>

1.  PLAINTIFFS bring this complaint under 42 U.S.C. § 1983 seeking damages as well as injunctive and declaratory relief from DEFENDANTS for violations of Kirk Bangstad's rights, both individually and as owner of the Minocqua Brewing Company LLC, and the Minocqua Brewing Company LLC's rights itself under the United States Constitution, the Wisconsin Constitution and Wisconsin state law.

2.  The DEFENDANTS in this action are THE TOWN OF MINOCQUA, MARK HARTZHEIM, SUSAN HEIL, BRIAN FRICKE, ERIKA PETERSEN, JOHN THOMPSON, and DOES 3-10 each of whom exercised decision and policy making authority over the Town of Minocqua and each of whom violated PLAINTIFFS' rights in their official and/or individual capacities.

3.  DEFENDANTS have been exercising their authority as though they were little despots ruling over the Kingdom of Minocqua. Their authoritarian and unconstitutional conduct has been nearly limitless, and their campaign of retaliation, harassment, and intimidation against the PLAINTIFFS has known no end.  They have repeatedly, unconstitutionally, and unjustifiably impeded PLAINTIFFS' zoning applications, placed zoning conditions on PLAINTIFFS that are intended to obstruct the rights secured to PLAINTIFFS by the First

Amendment to the United States Constitution, and fabricated authority to take enforcement actions against PLAINTIFFS. Defendants have further discriminated against PLAINTIFFS, intimidated PLAINTIFFS, and retaliated against PLAINTIFFS because of PLAINTIFFS' constitutionally protected activities in violation of the First Amendment to the United States Constitution and Article 1, § 4 of the Wisconsin Constitution. Further, and more concerningly, the retaliatory conduct of the DEFENDANTS is likely to chill political activity and other protected speech in the Town of Minocqua for years to come.

4.     Similarly, and just as alarmingly, DEFENDANTS have infringed upon PLAINTIFFS' right to due process under the Fourteenth Amendment to the United States Constitution through their imposition of an extended and notably more arduous zoning procedure than other similarly situated businesses have endured. DEFENDANTS have further refused to provide PLAINTIFFS with zoning recommendations that they have provided to numerous other similarly situated businesses in their respective jurisdictions and have also allowed clearly biased members of the Town Board of Supervisors, to adjudicate zoning decisions related to the Minocqua Brewing Company LLC.

5.     The Town of Minocqua has additionally violated PLAINTIFFS' right to equal protection by way of a campaign of intimidation, wherein DEFENDANTS

undertook enforcement actions against the Minocqua Brewing Company LLC, without any authority to do so. They have also regularly and repeatedly filed complaints, either officially or through agents, against the Minocqua Brewing Company with Oneida County for alleged ordinance violations while refusing to file similar complaints against other businesses engaged in comparable conduct within the Town of Minocqua.

6.    The retaliatory actions by the Town of Minocqua, under the leadership of current Chairman Mark Hartzheim, current Supervisors Susan Heil, Brian Fricke, Erika Petersen, former Supervisor John Thompson, and DOES 3-10, persist to this day and are explicitly linked to Mr. Bangstad's progressive political activities. It is also crucial to note that Susan Heil and John Thompson, during pertinent periods and presently, are affiliated with the Facebook hate group ironically named "We Love You Kirk." The Facebook group "We Love You Kirk" is a hate group created by Mr. Bangstad's right-wing political opponents, and launches daily assaults aimed at the Minocqua Brewing Company and Mr. Bangstad, often for their left-wing political advocacy.[1]

7.    Ultimately, DEFENDANTS have been exercising their authority with an entitlement reminiscent of King George III and treating Minocqua as their

---

[1] https://www.facebook.com/groups/3757017811009117/

personal fiefdom. They have taken it upon themselves to determine who merits the constitutional protections guaranteed to all Americans and who does not. They have additionally imposed their own criteria for what is acceptable political activity within the Town of Minocqua and use their powers to punish any individual and/or businesses that criticizes or disagrees with them. DEFENDANTS' repeated violations of the Constitution of the United States and their authoritarian behavior have been nothing short of abhorrent, and it is up to this Court to end the DEFENDANTS' illegal and unconstitutional behavior and hold the DEFENDANTS accountable for their violations of the Constitution of the United States and State of Wisconsin.

## **JURISDICTION AND VENUE**

8.   This civil action is brought to redress deprivations of constitutional rights protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the First and Fourteenth Amendments to the United States Constitution.   Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367 and statutory and constitutional provisions.

9.   Jurisdiction is also proper under federal common law and 28 U.S.C. § 1367(a).

10.   Venue is proper in this Court under 28 U.S.C. § 1391(b), because DEFENDANTS reside in, and all incidents, events, and occurrences giving rise

to this action occurred in, the County of Oneida, Wisconsin within the Western District of Wisconsin.

## **PARTIES**

11. The Plaintiff, Minocqua Brewing Company LLC (hereinafter MBC), is a legally incorporated, licensed, and registered commercial entity engaged in operations within the State of Wisconsin and across the United States of America. This includes conducting business from a publicly accessible tap room location situated in the Town of Minocqua, located within Oneida County. The company is actively involved in the production and distribution of an array of premium beers, other beverages, and assorted consumer goods.

12. The Plaintiff, Kirk C. Bangstad (hereinafter BANGSTAD), is the owner and operator of the Minocqua Brewing Company LLC. In these and other capacities, he manages, supervises, and oversees the commercial distribution of the various products of the business throughout the State of Wisconsin and nationwide, including but not limited to a popular tap room located at 329 East Front Street in the Town of Minocqua.

13. The Defendant, Town of Minocqua (hereinafter TOWN), is an unincorporated, official governmental entity established and maintained under the Constitution and the laws of the State of Wisconsin to serve, support, protect, and guarantee

the rights, interests, and positions of its resident constituents. For the purposes of the allegations in this civil rights complaint, it acts and operates by and through the Minocqua Town Board of Supervisors (hereinafter TOWN BOARD) and the Minocqua Plan Commission (hereinafter TOWN COMMISSION), among other established offices, agencies, and units of town government.

14.    The Defendants, Mark Hartzheim (hereinafter HARTZHEIM), Susan Heil (hereinafter HEIL), Brian Fricke (hereinafter FRICKE), Erika Petersen (hereinafter PETERSEN) and John Thompson (hereinafter THOMPSON) are the Chairman of the Minocqua Town Board, and current and former members of the Minocqua Town Board of Supervisors, respectively.  At all times relevant to this Complaint, DEFENDANTS HARTZHEIM, HEIL, FRICKE, PETERSEN, and THOMPSON were acting under the color of law and exercising policy and decision-making authority over the Town of Minocqua.  HARTZHEIM, HEIL, FRICKE, PETERSEN, and THOMPSON are sued in both their official and individual capacities.

15.    At all relevant times, DOES 3-10 are employees, elected officials, or other individuals with policy and decision-making authority over the Town of Minocqua and are sued in both their official and individual capacities.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16.    PLAINTIFFS repeat and reallege each and every allegation in paragraphs 1 through of 15 this Complaint with the same force and effect as if fully set forth herein.

17.    Throughout recent years, BANGSTAD has exercised publicly and proudly his right and privilege under the First Amendment to the United States Constitution to engage in political discourse, promotion, and advocacy, including his overt support for the election of various national, state, and local candidates to public office. In so doing, BANGSTAD has not only articulated his legally protected and constitutionally guaranteed views, perspectives, and opinions in various writings, publications, electronic communications, radio broadcasts, and public appearances but has also visibly posted and overtly displayed various signs and posters in the heavily trafficked and frequently visited downtown area of the Town of Minocqua, in Oneida County.

18.    During many of those recent years, including but not limited to periods of national, statewide, and local campaigns, BANGSTAD has manufactured and distributed to patrons and clients of MBC several of his high-quality beers and other beverages with various types of on-product labeling, similarly promoting and signaling his support of and advocacy for candidates for public office, along

with related issues, concerns and challenges within the public domain and ambit of common interest.

19.     In further exercise of his constitutionally guaranteed rights and privileges under the First Amendment to the Constitution of the United States of America, BANGSTAD has also manufactured various items of clothing that similarly articulate and advance his views, perspectives, and opinions on issues, concerns, and challenges within the public domain and ambit of common interest.

20.     These political and campaign-related actions by BANGSTAD and MBC have attracted and retained the attention, the support, and the encouragement of many residents in and throughout the Town of Minocqua, Oneida County, the State of Wisconsin, and the nation generally.

21.     Those same expressions of free speech have also attracted and retained the disapproving attention, public disagreement, and overt condemnation by others, including some elected and appointed officials, agents, and employees of the TOWN, including HARTZEIM, THOMPSON, FRICKE, PETERSEN, and HEIL.

22.     BANGSTAD's problems with local government began in late September of 2020, when Oneida County sent BANGSTAD a letter demanding that he remove a Joe

Biden Presidential sign from his building at 238 Lakeshore Drive in the Town of Minocqua, citing Oneida County Ordinance 9.78 E (4).

23.     Upon information and belief, the TOWN and/or HARTZHEIM used their influence to pressure Oneida County to take the aforementioned enforcement actions against BANGSTAD.

24.     BANGSTAD refused to allow Oneida County to violate the rights he as an American held so dearly and fought back using his social media presence.  He was ultimately victorious, and Oneida County and the Town were forced to stand down, but the TOWN never forgot or forgave him for placing the large Joe Biden sign within their borders.

25.     The dispute between BANGSTAD and MBC, on the one hand, and the TOWN and Oneida County, on the other, over the Biden sign and the TOWN's and Oneida County's response to the Covid pandemic drew national attention, including in a New York Times article published on October 29, 2020.[2]

26.     In early 2021, PLAINTIFFS purchased a historic Texaco gas station, which had served as a bike shop for decades under the name "Z-Best bikes." The structure's size made maintaining an indoor showroom difficult so they would regularly use

---

[2]https://www.nytimes.com/2020/10/29/us/politics/wisconsin-trump-biden-coronavirus.html.

their driveway and an adjacent grassy area to the east of their driveway as an open-air showroom. This grassy area, situated between the historic Texaco station and U.S. Highway 51, has become known as the "pork chop" due to its distinctive pork chop like shape. *See* Exhibit A, Photograph of Prior Outdoor Operations at Z-Best bikes. ECF No. 4-1.

27.    After purchasing the property and hiring an architect to design renovations and a future site plan, PLAINTIFFS began the zoning process which for the majority of small businesses in Minocqua is very simple and straightforward.

28.    In order to operate a business in the Town of Minocqua and many parts of Oneida County, one must operate under either an Administrative Review Permit (ARP) or a Conditional Use Permit (CUP). BANGSTAD was advised by his architect to initially apply for an ARP and then later to apply for a CUP.

29.    ARPs are essentially just a CUP by a different name with slightly different zoning requirements and a different approval process. Wisconsin state statutes treat them as identical instruments, however.

30.    Obtaining an ARP in the Town of Minocqua is a multi-step process. An applicant must first submit their application to the Oneida County zoning department. The application is then presented to the TOWN COMMISSION who then votes for or against a recommendation, and then sometimes submits the application to the

TOWN BOARD for a second vote for or against a recommendation. Regardless of the outcome, after the TOWN makes its recommendation decision, the application then goes back to the zoning department for approval. A recommendation to approve from a local municipality effectively guarantees approval by the zoning department and a recommendation to deny makes approval incredibly unlikely.

31. The zoning department also has a policy of giving complete control over the conditions of an ARP to local municipalities.

32. Consequently, on August 19, 2021, PLAINTIFFS submitted their ARP application to the Oneida County zoning department, which then submitted the ARP application to the TOWN COMMISSION on September 9, 2021.

33. The TOWN's unconstitutional conduct began almost immediately thereafter and has been defined by a campaign of harassment, intimidation, retaliation, and violations of PLAINTIFFS' rights secured to them by the First and Fourteenth Amendments to the United States Constitution and Article 1, § 4 of the Wisconsin State Constitution.

34. The PLAINTIFFS' ARP application included a request for a waiver of 7 parking spaces which were required by county ordinance for the operation of their tap room. When PLAINTIFFS made this request, they did not foresee any issues

receiving parking space waivers as the TOWN has promulgated a very clear custom of always recommending that the zoning department waive parking space requirements.

35.    In fact, over the course of the past three years, the TOWN has recommended the waiver of 174 parking spaces for 11 businesses within the downtown Minocqua area alone, and upon information and belief, has not refused to recommend a parking requirement waiver for any business during those same three years.

36.    The parking space waivers were incredibly important for PLAINTIFFS' future plans for their tap room as they intended to build an outdoor beer garden on their property and would not have enough space for parking.

37.    On September 14, 2021, the TOWN COMMISSION held a meeting to discuss PLAINTIFFS' ARP application. At this meeting, HARTZHEIM and the TOWN COMMISSION refused to recommend that PLAINTIFFS receive their requested parking space waivers and HARTZHEIM also expressed concern that BANGSTAD would use the property to display left-wing political signs as he had previously done at his prior Minocqua Brewing Company location.

38.    The COMMISSION did provisionally approve an ARP recommendation pending final recommendation by the BOARD, but it was approved without the requested parking space waivers.

39.   After the meeting, Carla Blankenship, an employee of the Oneida County Zoning Department, stated that she was very surprised that the MBC did not receive a recommendation for a parking space waiver because it usually was "no big deal."

40.   As outlined earlier in this Complaint, the TOWN has a long history of always recommending parking space waivers.  In fact, when BANGSTAD owned and operated the Minocqua Brewing Company Inc., his prior business at a different downtown Minocqua location, he had received parking space waivers and was even allowed to use parking spaces owned by the TOWN.

41.   Further, when BANGSTAD sold that prior business, The Minocqua Brewing Company Inc., in 2021, the individual who purchased the business and the building applied for an ARP and received a recommendation from the TOWN for 43 parking space exemptions, and they were also allowed to use parking spaces owned by the TOWN.

42.   Similarly in 2020, the COMMISSION recommended, and the Oneida County zoning department approved a waiver of 12 required parking spaces for Café Sonder, a small coffee shop operating in downtown Minocqua.  Café Sonder required the parking space waivers so they could use their building's former parking lot as an outdoor patio dining area.  Effectively they were granted exactly the same recommendation that PLAINTIFFS were requesting for MBC.

43.   The TOWN COMMISSION's findings were first considered by the TOWN
BOARD on November 2, 2021. A public meeting was held, but ultimately
PLAINTIFFS were asked to return with a new site plan because the TOWN
BOARD was not going to recommend that PLAINTIFFS receive 7 parking space
waivers.

44.   PLAINTIFFS went in front of the TOWN BOARD again on December 21, 2021.
HARTZHEIM, THOMPSON, FRICKE, and HEIL all appeared at this meeting
and deliberated and voted on PLAINTIFFS' ARP application.

45.   Upon information and belief, PLAINTIFFS' ARP application could have been
considered at an earlier TOWN BOARD meeting, but the TOWN BOARD
wanted to intentionally delay PLAINTIFFS' ARP application in order to make it
more difficult for them to commence operations before the start of the summer
season in 2022.

46.   THOMPSON was a member of the Facebook group "We Love You Kirk" on the
date of this meeting.   *See* Exhibit C, We Love You Kirk Screenshot 1
(demonstrating that THOMSPON is a member of this group).  ECF No. 4-3.

47.   It is unclear if HEIL had joined the group "We Love You Kirk" on the date of
this meeting; she may have joined at a later date.   *See* Exhibit D, We Love You

Kirk Screenshot 2 (demonstrating that HEIL has been a member of this group for over a year). ECF No. 4-4.

48. As stated earlier in this Complaint, "We Love You Kirk" is a Facebook hate page dedicated to attacking BANGSTAD and MBC for their left-wing political advocacy. *See* Exhibit E (showing a sample of posts from the We Love You Kirk Facebook Group). ECF No. 4-5.

49. At the December 21, 2021, TOWN BOARD meeting, BANGSTAD, and zoning department director Karl Jennrich explained that the location for MBC did not have the physical space necessary to include 7 parking spaces.

50. At the meeting, HARTZHEIM also requested several conditions be placed on MBC that had never previously been placed on a business operating in Minocqua. The conditions were not entered into the final ARP recommendation but only because a member of the TOWN professional staff objected to the conditions and pointed out that they had never been placed on another business before.

51. The TOWN BOARD along with HEIL, and FRICKE, eventually voted to recommend the ARP but only once unnecessary and burdensome conditions were added to the ARP, each of which was intended to make PLAINTIFFS' business significantly more difficult to operate. *See* Exhibit F, Draft TOWN BOARD Minutes from 12/21/2021. ECF No. 4-6.

52.   One of the unnecessary and burdensome conditions recommended by the BOARD was that PLAINTIFFS be required to enter into a revocable license agreement with the TOWN to allow access across the "pork chop" from U.S. Highway 51 to the MBC tap room parking lot.

53.   The license agreement required by the TOWN BOARD allowed the TOWN to revoke access at any time and without any form of due process, effectively giving the TOWN control over the property.  Upon information and belief, the TOWN does not regularly require abusive and controlling licensing agreements for other businesses applying for ARPs or CUPs.

54.   During the 20-plus year span of Z-Best bikes' operation at 329 East Front Street, a driveway was present allowing vehicles to cross the pork chop, which provided access from U.S. Highway 51 to the Z-Best bikes parking lot at 329 Front Street.

55.   It should be noted that the TOWN did not mandate that Z-Best bikes have a revocable license agreement before they would allow customers to drive over the pork chop and access the Z-Best bikes parking lot.

56.   Unfortunately for PLAINTIFFS, no appeal process existed to challenge the TOWN BOARD's recommendation.

57.    Once the burdensome ARP was recommended to the Oneida County Zoning Department, HARTZHEIM continued to use his position as chairman of the TOWN BOARD to prevent PLAINTIFFS from receiving the parking exemptions that every other applicant over the previous three years had been provided.

58.    On March 8, 2022, MBC'S ARP was approved by the Oneida County Zoning Department with only one parking spot waiver, a condition forbidding outdoor displays, and directing PLAINTIFFS to Oneida County Zoning Ordinance 9.78. The same ordinance that Oneida County had attempted to unconstitutionally enforce against BANGSTAD in September 2022.

59.    HARTZHEIM, THOMPSON, FRICKE, HEIL, and the TOWN, were insistent that MBC's ARP would restrict them from having any outdoor presence.  Upon information and belief, the requested restrictions were incorporated into the ARP with the intention to later use them to prevent PLAINTIFFS from exercising their rights under the First Amendment to the United States Constitution to display political signs.    *See* Exhibit G, TOWN BOARD Letter RE MBC ARP Conditions.  ECF No. 4-7.

60.    Oneida County approved all of the conditions of the ARP.

61.    The ARP approval did not end the unconstitutional conduct of the DEFENDANTS, however. If anything, it only exacerbated their campaign against PLAINTIFFS.

62.    As the summer season of 2022 approached, Defendants HARTZHEIM, HEIL, THOMPSON, FRICKE, PETERSEN, and DOES 3-10 conspired to use their positions of power and authority to prevent the MBC tap room from opening its doors.

63.    On May 25, 2022, The TOWN, by and through the Town of Minocqua attorney Greg Harrold, sent PLAINTIFFS a letter commanding PLAINTIFFS not to open their doors until every condition of their ARP was met and not to place tents on the property to create outdoor seating.  The TOWN did not have the authority to enforce either of these commands, and Greg Harrold's letter was sent to PLAINTIFFS with the sole purpose of intimidating and harassing PLAINTIFFS. Exhibit H, Letter from Gregory Harrold RE 329 East Front Street.  ECF No. 4-8.

64.    Based on Greg Harolds' letter, PLAINTIFFS secured a lease for 317 East Front Street so they would be able to operate a tap room while they fulfilled all of the conditions of their ARP.

65.    Upon information and belief, while PLAINTIFFS were operating at their 317 Front Street location, the TOWN submitted several complaints to Oneida County,

either directly or via agents, asserting that the PLAINTIFFS were operating a tap room at 317 East Front Street without an ARP for that location.

66.    The Oneida County zoning department, issued a citation against PLAINTIFFS for operating at 317 East Front Street without an ARP.

67.    The Oneida County zoning department maintains a policy in which they only enforce zoning ordinances when there is a complaint, giving the DEFENDANTS the opportunity to selectively enforce Oneida County Ordinances against PLAINTIFFS to punish them for their protected speech.

68.    Over the last 30 years, approximately 15 other businesses have operated at 317 East Front Street without an ARP or CUP, and the TOWN never filed complaints against any of the prior businesses with Oneida County, even though the TOWN would have known that the aforementioned businesses were operating without an ARP or CUP.

69.    Shortly thereafter, DEFENDANTS HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and/or DOES 3-10 arranged to hold a Town Board of Supervisors meeting scheduled for June 7, 2022, with the intention of holding a vote to order PLAINTIFFS not to open the MBC tap room before completing each of the conditions of their ARP.  The TOWN did not have the authority to

enforce the conditions of PLAINTIFFS' ARP, however, nor did PLAINTIFFS' ARP require that each of the conditions be met before the tap room opened.

70.   On June 5, 2022, in another attempt to intimidate and harass PLAINTIFFS, THOMPSON used the right-wing Facebook hate page "We Love You Kirk" to invite BANGSTAD's political adversaries to the June 7, 2022, meeting.   *See* Exhibit, I THOMPSON Facebook Post.  ECF No. 4-9.

71.   On June 7, 2022, the TOWN held a TOWN BOARD meeting to vote to bar PLAINTIFFS from opening the MBC tap room at 329 East Front Street.

72.   THOMPSON was instructed by the town attorney to recuse himself from the June 7, 2022, vote due to his conduct on June 5, 2022.  HEIL, who is believed to have also been a member of "We Love You Kirk" the right-wing Facebook hate page on June 7, 2022, did not recuse herself, however.  *See* Exhibit D (demonstrating that Heil has been a member of the group for over one year). ECF No. 4-4.

73.   The first action taken by the TOWN BOARD on June 7, 2022, was to require PLAINTIFFS to post a $30,000 bond to ensure PLAINTIFFS' compliance with the ARP.

74.   After the bond vote, TOWN professional staff finally interjected and explained that the TOWN BOARD did not have the authority to prevent PLAINTIFFS from opening their taproom and the meeting was adjourned.

75.   Upon information and belief, the TOWN sent the letter, held the meeting, and voted to require PLAINTIFFS to post a bond knowing that they did not have the authority to prevent PLAINTIFFS from opening their tap room.

76.   PLAINTIFFS finally opened at their 329 East Front Street location and set up tents in their parking lot in late June of 2022.

77.   Upon information and belief, the TOWN proceeded to make repeated complaints, either directly or via agents, about PLAINTIFFS' alleged violations of their ARP's restrictions on outdoor activities knowing that at least two other businesses in downtown Minocqua were operating under ARPs with the same restrictions and were engaging in outdoor activities. DEFENDANTS did not file complaints against the other violating businesses, nor cause complaints to be filed against the other violating businesses during the relevant time period, however.

78.   The TOWN, in a further attempt to injure PLAINTIFFS' business, requested that the county block off access to PLAINTIFFS' parking lot from U.S. Highway 51, and the county complied with this request and placed concrete barriers separating MBC'S tap room from U.S. Highway 51.

79.   Shortly thereafter, and in an effort to comply with Oneida County ordinances, PLAINTIFFS began trying to amend their ARP in order to allow them to engage in outdoor operations.

80.   Feeling frustrated, PLAINTIFFS retained attorney Mark Leitner to try and expedite the zoning process.  Attorney Leitner sent the county a demand letter threatening suit on September 14, 2022.

81.   After failing to have their ARP amended, PLAINTIFFS applied for a CUP with the Oneida County on November 17, 2022, and then reapplied on November 29, 2022, in effect starting the entire zoning process over again.

82.   Throughout the entire CUP application process, HARTZHEIM used his position as Chairman of the Town Board of Supervisors to deliberately interfere with PLAINTIFFS' CUP application by consistently contacting the Oneida County zoning department with a variety of demands and suggestions and using the Oneida County zoning department to obstruct and disrupt the progression of the application process.

83.   Upon information and belief, HARTZHEIM reached out to Oneida County regarding PLAINTIFFS' zoning applications significantly more frequently than he had done for any previous project.

84.   PLAINTIFFS drafted their CUP application and designed their site plan to meet the TOWN BOARD's demand that they have six available parking spots by placing parking spaces on the "pork chop."

85.   On or about April 10, 2023, PLAINTIFFS' CUP application was considered by the TOWN BOARD, and the TOWN BOARD, including DEFENDANTS HARTZHEIM, THOMPSON, FRICKE, PETERSEN, and HEIL voted not to allow PLAINTIFFS to use the "pork chop" for parking, even though they allowed the prior business at 329 Front Street to use the "pork chop" as an outdoor showroom, and voted to recommend denial of PLAINTIFFS' CUP application.

86.   On April 18, 2023, JOHNSON was replaced on the TOWN BOARD by William Fried.

87.   On April 19, 2023, Oneida County voted to deny PLAINTIFFS' CUP application based, at least in part, on the recommendation of the BOARD.  The county noted that the TOWN was not going to approve the use of the pork chop for parking so the PLAINTIFFS' site plan would not have the requisite 6 parking spaces needed for approval and that PLAINTIFFS would not be getting a waiver.

88.   PLAINTIFFS opened for the summer season in early May 2023, and upon information and belief, DEFENDANTS HARTZHEIM, FRICKE, PETERSEN, HEIL, and/or DOES 3-10 promptly initiated a new campaign of complaints

against PLAINTIFFS to Oneida County. These complaints typically referenced PLAINTIFFS' engagement in outdoor activities in violation of the conditions of their ARP.

89.   The TOWN also demanded that Oneida County revoke PLAINTIFFS' ARP.  This campaign of disparate treatment continued until at least August 2, 2023.

90.   PLAINTIFFS filed another CUP application with the county on May 10, 2023. This new CUP application again asked for several parking space waivers.

91.   The COMMISSION met to discuss PLAINTIFFS' new CUP application on May 30, 2023, and voted to recommend the denial of PLAINTIFFS' CUP application. After the meeting, HARTZHEIM sent a letter to the county demanding that they deny the CUP application because it was not sufficiently different from the initial CUP application, and as such, county ordinances required that PLAINTIFFS wait at least a year before reapplying for a new CUP.

92.   On June 14, 2023, Oneida County held a meeting to address HARTZHEIM's concerns and found that the new CUP application was sufficiently different, and PLAINTIFFS were allowed to continue with their reapplication.

93.   On July 18, 2023, the BOARD, including DEFENDANTS HARTZHEIM, FRICKE, PETERSEN, and HEIL met and voted to recommend the denial of

PLAINTIFFS' new CUP application for approval by Oneida County. The TOWN BOARD was specifically concerned about MBC's request for parking exemptions and similarly alleged that MBC customers had been walking across the "pork chop," an action that the TOWN BOARD found unacceptable.

94.    Once again, PLAINTIFFS had no opportunity to appeal DEFENDANTS' recommendation for denial of their CUP.

95.    Revocation of PLAINTIFFS ARP was again discussed by Oneida County on August 2, 2023.  And they voted to revoke PLAINTIFFS' ARP.[3]  An appeal is currently pending.

96.    On or about August 25, 2023, Oneida County sent zoning department employees into Minocqua to investigate ordinance violations because MBC had been publicly announcing that the TOWN and Oneida County had been targeting MBC with enforcement actions while allowing other businesses to openly violate county ordinances.

97.    The investigation found 12 businesses openly violating county ordinances in downtown Minocqua.  Upon information and belief, the TOWN knew that these

---

[3] https://www.wortfm.org/minocqua-brewing-company-owner-says-brewpub-shuttered-over-political-vendetta/

12 other businesses were violating county ordinances and chose not to report, harass, or try and shut them down.

98.   On September 27, 2023, Plaintiffs were granted their second CUP to allow them to operate a beer garden at their 329 Front Street Location.

### FIRST CLAIM FOR RELIEF
**Violation of Plaintiffs Rights Under the First Amendment—Retaliation Against Protected Speech and Activities (42 U.S.C. § 1983) (AGAINST THE TOWN OF MINOCQUA, HARTZHEIM, FRICKE, HEIL, PETERSEN, THOMPSON and DOES 3-10)**

99.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 98 of this Complaint with the same force and effect as if fully set forth herein.

100.   PLAINTIFFS had a cognizable right under the First Amendment to the United States Constitution as applied to municipal actors by the Fourteenth Amendment to the United States Constitution to freely speak and engage in political activity. DEFENDANTS repeatedly violated that right over the course of a multiyear campaign of unconstitutional retaliation against PLAINTIFFS for their constitutionally protected activities.

101.   From 2016-2020, BANGSTAD operated the Minocqua Brewing Company Inc., in downtown Minocqua and was provided with a significant number of parking space waivers to allow him to operate.  BANGSTAD also was allowed to use

TOWN owned parking spaces for his business, and never had any issues or problems with the TOWN, TOWN BOARD, TOWN COMMISSION, and/or HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, or DOES 3-10.

102. In 2020, BANGSTAD became significantly more politically active and vocal. He publicly espoused left-wing viewpoints, plastered his building with signs for Democratic political candidates, openly criticized the TOWN's response to the COVID-19 pandemic, and ran for public office as a Democrat.

103. BANGSTAD has also regularly and publicly criticized HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, the TOWN, the TOWN BOARD, and the TOWN COMMISSION, often using the Minocqua Brewing Company Facebook page, which currently has over 80,000 followers.[4]

104. BANGSTAD's political activity and speech was protected by the First Amendment to the United States Constitution as applied to municipal actors by the Fourteenth Amendment to the United States Constitution.

105. BANGSTAD's constitutionally protected political activity drew the ire of HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, DOES 3-10, the TOWN, the TOWN BOARD, and the TOWN COMMISSION. HARTZHEIM,

---

[4] https://www.facebook.com/MBCBrews

HEIL, FRICKE, PETERSEN, THOMPSON, and DOES 3-10 have used their positions of power to retaliate against PLAINTIFFS for their progressive political advocacy ever since.

106. HARTZHEIM, HEIL, and THOMPSON are outspoken conservatives and/or Republicans and upon information and belief, consider themselves political adversaries of BANGSTAD.

107. THOMPSON is and was, during relevant times, a member of the Facebook hate group "We Love You Kirk." Exhibit C. ECF No. 4-3.

108. HEIL is and was, during relevant times, a member of the Facebook hate group "We Love You Kirk." Exhibit D. ECF No. 4-4.

109. "We Love You Kirk" is a right-wing Facebook hate group that publishes daily attacks against BANGSTAD, MBC, and their progressive political advocacy. Exhibit E.  ECF No. 4-5.

110. HARTZHEIM mentioned that he was concerned that BANGSTAD would place constitutionally protected political signs on the MBC tap room during the September 14, 2021, TOWN COMMISSION meeting.

111. The TOWN, HARTZHEIM, FRICKE, HEIL, THOMPSON, and DOES 3-10 wrote the ARP to forbid PLAINTIFFS from having outdoor displays intending to

use that provision to prevent PLAINTIFFS from placing progressive political signs on the outside of the MBC tap room.  *See* Exhibits F and G.  ECF No. 4-6 and 4-7.

112.  BANGSTAD did not suffer any injuries or deprivations at the hands of HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, DOES 3-10, the TOWN, the TOWN BOARD, or the TOWN COMMISSION until after he began his vocal political activism.

113.  HARTZHEIM, FRICKE, PETERSEN, HEIL, and THOMPSON's behavior has made their intention to punish PLAINTIFFS for espousing progressive political viewpoints in the Town of Minocqua clear.

114.  As a direct result of PLAINTIFFS' constitutionally protected political activity, PLAINTIFFS have suffered numerous deprivations and injuries at the hands of HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, DOES 3-10 and the TOWN.

115.  HARTZHEIM, HEIL, FRICKE, PETERSEN, and THOMPSON's refusal to recommend that PLAINTIFFS receive the same parking space exemptions that every other business in downtown Minocqua has received was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in direct violation of the First Amendment to the Constitution of the United States

as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States.  *See* Exhibit L, Letter to COUNTY COMMITTEE from Chris Naumann, and Exhibit B, Selected Parking Waivers 2020-2023.  ECF No. 4-2 and 4-12.

116.   HARTZHEIM, HEIL, FRICKE, and THOMPSON's demand that PLAINTIFFS' ARP forbid any outdoor presence was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in direct violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States.  *See* Exhibits F and G.  ECF No. 4-6 and 4-7.

117.   HARTZHEIM, FRICKE, PETERSEN, HEIL, and THOMPSON's recommendation to deny both of PLAINTIFFS' CUP applications was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States.   *See* Exhibits C and D.  ECF No. 4-3 and 4-4.

118.   HARTZHEIM, FRICKE, PETERSEN, HEIL, and THOMPSON's attempts to prevent the MBC tap room at 329 East Front Street from opening based on fabricated authority were in retaliation for PLAINTIFFS' constitutionally

protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States. *See* Exhibit H. ECF No. 4-8.

119. HARTZHEIM, HEIL, FRICKE, PETERSEN, and THOMPSON's attempts to enforce the conditions of PLAINTIFFS' ARP without any authority to do so were in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States. *See* Exhibits H and I. ECF No. 4-8 and 4-9.

120. HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and/or DOES 3-10's campaign of harassment and intimidation whereby they regularly reported PLAINTIFFS for violations of the conditions of their ARP, while allowing other similarly situated businesses to engage in identical activity, was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States. *See* Exhibit K. ECF No. 4-11.

121.   HARTZHEIM's use of his position of authority to influence the Oneida County zoning department staff and interfere with PLAINTIFFS' ARP and CUP applications was in retaliation for PLAINTIFFS' constitutionally protected political activity and speech and in violation of the First Amendment to the Constitution of the United States as applied to municipal actors by the Fourteenth Amendment to the Constitution of the United States.   *See* Exhibit M, Email to HARTZHEIM RE Enforcement Actions against MBC.  ECF No. 4-13.

122.   The intent of the DEFENDANTS to punish progressive political activity was clear and their retaliatory actions have been both brutal and effective.

123.   DEFENDANTS' conduct is also likely to have a profound and lasting chilling effect on progressive political activity within the Town of Minocqua for years to come as outspoken progressives and/or critics of the TOWN are clearly punished by the TOWN for their protected speech and political activities.

124.   HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and DOES 3-10 were at all times relevant to this action acting under the color of law.

125.   As a result of the unconstitutional conduct of HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and DOES 3-10, PLAINTIFFS' business has suffered and continues to suffer, and its beverage sales have been greatly reduced. PLAINTIFFS were also forced to hire several attorneys to try and better facilitate

the zoning application process, pay thousands of dollars in unnecessary application fees, lease a second location, and pay an architect for multiple site and building redesigns.

126. HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and DOES 3-10 are liable for PLAINTIFFS' injuries because they were integral participants in the unconstitutional retaliation against PLAINTIFFS, or because they were aware of the unconstitutional retaliation by their codefendants and failed to intervene to prevent said unconstitutional retaliation.

127. PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

128. PLAINTIFFS further seek an injunction enjoining the TOWN, TOWN BOARD, TOWN COMMISSION, HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and/or DOES 3-10 from continuing to retaliate against the PLAINTIFFS in the future based on PLAINTIFFS' political statements, opinions, and/or beliefs.

129.  The unconstitutional conduct of HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and DOES 3-10 was and continues to be willful, wanton, malicious, and done with reckless disregard for the rights of PLAINTIFFS and

therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS.

130.   PLAINTIFFS also seek attorney fees under 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**Fourteenth Amendment — Procedural Due Process (42 U.S.C. § 1983)**
**(AGAINST THE TOWN OF MINOCQUA, HARTZHEIM, FRICKE,**
**PETERSEN, HEIL, THOMPSON, and DOES 3-10)**

131.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 130 of this Complaint with the same force and effect as if fully set forth herein.

132.   PLAINTIFFS had a cognizable right under the Fourteenth Amendment to the U.S. Constitution to procedural due process during the zoning application process.

133.   The DEFENDANTS' role in the Oneida County zoning process in which they make recommendations on zoning applications is quasi-judicial in nature.

134.   A fundamental principle of procedural due process is a fair hearing in front of an impartial tribunal. In the context of zoning issues, the Fourteenth Amendment requires that the committee responsible for rendering zoning decisions must be impartial and unbiased.

135. The Fourteenth Amendment requirement for an impartial tribunal is so deeply ingrained in the principles of due process that even the mere threat of bias during a zoning hearing constitutes a violation of an applicant's right to due process.

136. DEFENDANTS' conduct over the relevant time period demonstrates a clear bias and a lack of impartiality.

137. THOMPSON, as a Supervisor for the TOWN, voted on zoning recommendations concerning PLAINTIFFS while a member of the right-wing Facebook hate group "We Love You Kirk," violating PLAINTIFFS' right to due process secured to them by the Fourteenth Amendment to the Constitution of the United States.   *See* Exhibits D and I.  ECF No. 4-4 and 4-9.

138. HEIL, as a Supervisor for the TOWN, voted on zoning recommendations concerning PLAINTIFFS while a member of the right-wing Facebook hate group "We Love You Kirk," violating PLAINTIFFS' right to due process secured to them by the Fourteenth Amendment to the Constitution of the United States.

139. PLAINTIFFS had no hope of receiving a fair hearing in front of an impartial tribunal when two of the members of the tribunal were also members of a Facebook hate group dedicated to PLAINTIFFS.   *See* Exhibits D and I.  ECF No. 4-4 and 4-9.

140.   The conduct and decisions made by the TOWN, the TOWN BOARD, the TOWN COMMISSION, HARTZHEIM, HEIL, PETERSEN, FRICKE, THOMPSON, and DOES 3-10 also demonstrate a clear lack of impartiality.

141.   The TOWN, HARTZHEIM, HEIL, PETERSEN, FRICKE, THOMPSON, and DOES 3-10 denied PLAINTIFFS the same parking space exemption recommendation that was provided to every other business in downtown Minocqua, demonstrating a clear bias and lack of impartiality.  *See* Exhibit B. ECF No. 4-2.

142.   The TOWN, HARTZHEIM, HEIL, PETERSEN, FRICKE, THOMPSON, and/or DOES 3-10 have promulgated a policy of regularly reporting PLAINTIFFS for violations of the conditions of their ARP, while allowing other similarly situated businesses to engage in identical activity, demonstrating a clear bias and lack of impartiality.  *See* Exhibit K. ECF No. 4-11.

143.   The TOWN, HARTZHEIM, HEIL, PETERSEN, FRICKE, THOMPSON, and DOES 3-10 have continually attempted to enforce the conditions of PLAINTIFFS' ARP without any authority to do so, demonstrating a clear bias and lack of impartiality.  *See* Exhibits H and I.  ECF No. 4-8 and 4-9.

144.   The conduct of DEFENDANTS and the disparate treatment of PLAINTIFFS can only be rationalized as the result of an inherent bias against PLAINTIFFS and it continues to this day.  *See* Exhibits B and K.  ECF No. 4-2 and 4-11.

145.   PLAINTIFFS have not received the due process guaranteed to them under the Fourteenth Amendment to the Constitution of the United States at any zoning hearing in front of the TOWN BOARD or the TOWN COMMISSION, because PLAINTIFFS have always been in front of a biased tribunal.

146.   The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and DOES 3-10 were at all times relevant to this action acting under the color of law.

147.   As a result of the unconstitutional conduct of the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and DOES 3-10, PLAINTIFFS' business has suffered and continues to suffer, and its beverage sales have been greatly reduced.  PLAINTIFFS were also forced to hire several attorneys to try and better facilitate the zoning application process, lease a building to open a tap room, pay thousands of dollars in unnecessary application fees, and pay an architect for multiple site and building redesigns.

148.   PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

149.   PLAINTIFFS additionally seek a declaration that every zoning recommendation made by the TOWN BOARD or TOWN COMMISSION related to the Minocqua Brewing Company with the input of HARTZHEIM, HEIL, FRICKE, PETERSEN, and THOMPSON, during the relevant time period was made in violation of PLAINTIFFS' right to due process secured to them by the Fourteenth Amendment to the Constitution of the United States.

150.   PLAINTIFFS further seek an injunction enjoining the TOWN, BOARD, COMMISSION, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 from treating BANGSTAD and MBC differently because of their political statements, views, and beliefs and from otherwise making any further zoning recommendations to Oneida County related to BANGSTAD or MBC without an impartial tribunal.

151.   PLAINTIFFS finally seek attorney fees under 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF
### Fourteenth Amendment—Equal Protection (42 U.S.C. § 1983)
### (AGAINST THE TOWN OF MINOCQUA, HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON and DOES 3-10)

152.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 151 of this Complaint with the same force and effect as if fully set forth herein.

153. PLAINTIFFS have a cognizable right under the Fourteenth Amendment to the United States Constitution to equal protection under the law.

154. A fundamental principle of equal protection under the Fourteenth Amendment is that similarly situated individuals must receive equal treatment at the hands of government actors.

155. In the context of zoning issues, the Fourteenth Amendment requires that a municipality may not irrationally and arbitrarily discriminate against a natural person or business even if that natural person or business is not a member of a suspect class.

156. PLAINTIFFS suffered disparate treatment at the hands of the TOWN, the TOWN BOARD, the TOWN COMMISSION, HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and/or DOES 3-10.

157. The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and DOES 3-10 refused to recommend that PLAINTIFFS receive the same parking space waiver recommendation that was provided to every other business in downtown Minocqua that recently applied for an ARP or CUP. *See* Exhibit B. ECF No. 4-2.

158.  In 2023, the Yacht Club, a restaurant less than two miles south of the MBC tap room received a recommendation for 30 parking space exemptions when they applied for their CUP.

159.  In 2022, Imaginuity, a toy store located two blocks from the MBC tap room received a recommendation for 7 parking space exemptions when they applied for their ARP.

160.  In 2022, Bartangos Cigar Bar located one block from the MBC tap room received a recommendation for 16 parking space exemptions when they applied for their ARP.

161.  In 2022, Isabella's Boutique, a clothing store located one block from the MBC tap room received a recommendation for 6 parking spot exemptions when they applied for their ARP.

162.  In 2021, Oakfire Pizza, a restaurant located less than three blocks from the MBC tap room received a recommendation for 43 parking space exemptions when they applied for their ARP.

163.  In 2021, Wild Turkey, a restaurant located only one block from the MBC tap room received a recommendation for 32 parking space exemptions when they applied for their ARP.

164. In 2020, T & T Auto Service, a mechanics shop located three blocks from the MBC tap room received a recommendation for 5 parking space exemptions when they applied for their ARP.

165. In 2020, Café Sonder, a small coffee shop located four blocks from the MBC taproom received a recommendation for 12 parking space exemptions when they applied for their ARP. Café Sonder is also currently using a former parking lot for an outdoor dining area, and they serve alcohol. Further, their ARP did not require them to provide a single parking space.

166. Café Sonder is situated identically to PLAINTIFFS and received a recommendation for the exact ARP conditions that PLAINTIFFS requested but were denied.

167. The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 have also promulgated a policy of regularly reporting PLAINTIFFS for violations of the conditions of their ARP while allowing other similarly situated businesses to engage in identical activity unharassed.

168. The TOWN's policy of selectively reporting alleged ordinance violations has been and continues to be targeted, discriminatory, and intentional and violates PLAINTIFFS' right to equal protection secured to them by the Fourteenth Amendment to the United States Constitution. *See* Exhibit K. ECF No. 4-11.

169. Downtown Minocqua is zoned B-1 and B-2.

170. Oneida County Ordinance 9.26(3) instructs that businesses operating under an ARP in B-1 or B-2 zoning districts may not have outdoor operations.

171. Yet Café Sonder is located in downtown Minocqua only 4 blocks south of the MBC Tap room and has outdoor operations.

172. Oakfire Pizza is also located in downtown Minocqua less than 3 blocks from the MBC Tap room and has outdoor operations.

173. The ARPs for Oakfire Pizza and Café Sonder are controlled by Oneida County Ordinance 9.26(3).

174. Oakfire Pizza and Café Sonder both have outdoor seating and dining but have never been reported by the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 for violating the condition of their ARP.

175. HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 were intimately involved in the ARP and CUP recommendations for the Yacht Club, Imaginuity, Bartango's Cigar Bar, Isabellas Closet, Wild Turkey, T & T Auto Service, Oakfire Pizza and Café Sonder.  Similarly, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 were aware that they granted businesses similarly situated to MBC every parking exemption they

requested while denying MBC their requested parking exemptions.   *See* Exhibit B. ECF No. 4-2.

176.   HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON and/or DOES 3-10 were similarly aware that Oakfire Pizza and Café Sonder were violating the conditions of their ARPs by allowing outdoor dining when HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON and/or DOES 3-10 filed reports with Oneida County against PLAINTIFFS for allowing outdoor operations.

177.   The disparate treatment suffered by PLAINTIFFS was intentional, completely arbitrary, had no expressed or apparent rational basis, and was the result of the DEFENDANTS' bias against PLAINTIFFS as demonstrated by a long and intentional campaign of discrimination, harassment, and intimidation against PLAINTIFFS.   *See* Exhibits H, K, and M. ECF No. 4-8,11, and 13.

178.   Upon information and belief, no other business in the Town of Minocqua over the last three years has suffered the kind of treatment that PLAINTIFFS have suffered at the hands of DEFENDANTS.   *See* Exhibit K. ECF No. 4-11.

179.   DEFENDANTS have repeatedly refused to provide PLAINTIFFS with equal protection under the law as required by the Fourteenth Amendment to the United States Constitution.   *See* Exhibit K. ECF No. 4-11.

180. At all times relevant to this Complaint the DEFENDANTS were acting under the color of law.

181. As a result of the unconstitutional conduct of HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and DOES 3-10, PLAINTIFFS' business has suffered and continues to suffer, and its beverage sales have been greatly reduced. PLAINTIFFS have also been forced to hire several attorneys to try and better facilitate the zoning application process, pay thousands of dollars in unnecessary application fees, lease a building to operate their tap room and pay an architect for multiple site and building redesigns.

182. The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and DOES 3-10 are liable for PLAINTIFFS' injuries because they were integral participants in the violations of PLAINTIFFS right to equal protection under the Fourteenth Amendment to the United States Constitution, or because they were aware of the unconstitutional conduct by their codefendants and failed to intervene to prevent the constitutional violations.

183. The conduct of HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and DOES 3-10 was willful, wanton, malicious, and done with reckless disregard for the rights or PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANTS.

184.   PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

185.   PLAINTIFFS further seek a declaration that DEFENDANTS violated PLAINTIFFS' right to equal protection secured to them by the Fourteenth Amendment to the Constitution of the United States by refusing to provide PLAINTIFFS with a recommendation for approval of their ARP with more than one parking space waiver.

186.   PLAINTIFFS additionally seek an injunction enjoining the TOWN, TOWN BOARD, TOWN COMMISSION, HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and/or DOES 3-10 from continuing their unconstitutional activity and from making any further zoning recommendations to Oneida County related to BANGSTAD or MBC that are based on unequal treatment.

187.   PLAINTIFFS finally seek attorney fees under 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**
**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**
**(Against THE TOWN OF MINOCQUA, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10)**

188.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 187 of this Complaint with the same force and effect as if fully set forth herein.

189.  Since at least 2021, the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 have deprived PLAINTIFFS of the rights and liberties secured to them by the First and Fourteenth Amendments to the United States Constitution, in that said DEFENDANTS and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of PLAINTIFFS, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice:

> (a)   Of enforcing Oneida County ordinances and ARP conditions using illegitimate town meetings and fabricated authority. The TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 at all times material herein knew or reasonably should have known that they do not have the authority to enforce Oneida County Ordinances and ARP conditions. DEFENDANTS also reasonably knew or should have known that this policy and/or custom was going to lead to abuse and injury and was per se unconstitutional under the Fourteenth Amendment to the United States Constitution. *See* Exhibit H. ECF No. 4-8.

(b)     Of inadequately supervising, training, controlling, assigning, and disciplining town staff, elected officials, and other personnel, including HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10, who the TOWN knew or in the exercise of reasonable care should have known would retaliate against PLAINTIFFS, for exercising their constitutional rights under the First Amendment to the United States Constitution.  *See* Exhibits A, B, C, D, H, I, K, L, and M.  ECF No. 4-1,2,3,4,8,9,11, and 12.

(c)     By having and maintaining an unconstitutional policy, custom, and/or practice of using the TOWN's zoning authority and influence with Oneida County to retaliate against citizens and businesses who espouse left-wing and/or progressive political speech, and/or criticize the TOWN.  This policy and/or custom was clearly demonstrated by the actions of HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10.  The policies, customs, and practices of the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 were also promulgated with a reckless disregard for individual rights and the

aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS and/or similarly situated individuals and/or businesses. *See* Exhibits A, B, C, D, H, I, K, L, and M. ECF No. 4-1,2,3,4,8,9,11,12, and 13.

(d)   By failing to institute appropriate policies regarding appropriate constitutional procedures and practices for zoning recommendation decisions. This policy and/or custom was clearly demonstrated by the actions of the TOWN BOARD, the TOWN COMMISSION, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10. The policies, customs, and practices of HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses. *See* Exhibits A, B, C, D, H, I, K, L, and M. ECF No. 4-1,2,3,4,8,9,11,12, and 13.

(e)    By failing to institute appropriate policies regarding constitutional procedures and practices for reporting zoning ordinance violations to the County.  This policy and/or custom was clearly demonstrated by the actions of the TOWN BOARD, TOWN COMMISSION, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10.  The policies, customs, and practices of HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses.  *See* Exhibit K. ECF No. 4-11.

(f)    By instituting a policy or custom whereby members of the TOWN BOARD were and are allowed to discriminate against zoning applicants due to personal or political differences.  This policy and/or custom was clearly demonstrated by the actions of the TOWN, HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and/or DOES 3-10.  The policies, customs, and practices of HARTZHEIM, HEIL, FRICKE, PETERSEN,

THOMPSON, and/or DOES 3-10 were also promulgated with a reckless disregard for individual rights and the aforementioned DEFENDANTS knew or should have known that this policy and/or custom was going to result in injuries to PLAINTIFFS or similarly situated individuals and/or businesses.  *See* Exhibits A, B, C, D, H, I, K, L, and M. ECF No. 4-1,2,3,4,8,9,11,12, and 13.

190. By reason of the aforementioned policies and practices of the DEFENDANTS, the TOWN, HARTZHEIM, FRICKE, PETERSEN, HEIL, THOMPSON, and/or DOES 3-10, PLAINTIFFS have been and continue to be injured and subjected to violations of the constitutional rights secured to them under the United States Constitution.

191. DEFENDANTS the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these DEFENDANTS condoned, tolerated, and through actions and inactions thereby ratified such policies.  Said DEFENDANTS also acted with deliberate indifference to the foreseeable effects and

consequences of these policies with respect to the constitutional rights of PLAINTIFFS and other individuals similarly situated.

192. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 have acted and continue to act with an intentional, reckless, and callous disregard for the constitutional rights of PLAINTIFFS.  The actions of HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 have been and continue to be willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

193. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by the TOWN are affirmatively linked to and have been a significantly influential force behind the injuries of PLAINTIFFS.

194. Accordingly, DEFENDANTS the TOWN, HARTZHEIM, HEIL, FRICKE, PETERSEN, THOMPSON, and/or DOES 3-10 each are liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

195. PLAINTIFFS bring this claim and seek all available remedies under state and federal law.

196.   PLAINTIFFS also seek attorney fees under 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Kirk Bangstad and the Minocqua Brewing Company LLC request entry of judgment in their favor and against DEFENDANTS THE TOWN OF MINOCQUA, MARK HARTZHEIM, SUSAN HEIL, JOHN THOMPSON, BRIAN FRICKE, ERIKA PETERSEN, and DOES 3-10 inclusive, as follows:

A.   For compensatory damages under federal and state law, in the amount to be proven at trial;

B.   For declaratory relief as outlined in the body of this Complaint;

C.   For injunctive relief as outlined in the body of this Complaint;

D.   For punitive damages against the individual defendants MARK HARTZHEIM, SUSAN HEIL, JOHN THOMPSON, BRIAN FRICKE, ERIKA PETERSEN, And DOES 3-10, in an amount to be proven at trial;

E.   For interest;

F.   For reasonable costs of this action, court costs, and attorneys' fees; and

G.    For such other and further relief as the Court may deem just, proper, and appropriate.

DATED:  October 16, 2023

*s/ Brian H. Potts*
Brian H. Potts, Bar No. 1060680
BPotts@perkinscoie.com
PERKINS COIE LLP
33 E Main St, Ste 201
Madison, Wisconsin 53703-3095
Telephone:  (608) 663-7460
Facsimile:   (608) 663-7499

Frederick B. Melms Esq, Bar No. 1093957
FREDERICK MELMS ATTORNEY AT LAW
PO BOX 212
Woodruff, WI 54568
Telephone:   (715) 892-3023
Facsimile:   (715) 449-4304

*Attorneys for Plaintiffs THE MINOCQUA
BREWING COMPANY LLC, and KIRK C.
BANGSTAD*