IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE MINOCQUA BREWING COMPANY
LLC and KIRK C. BANGSTAD,

                          Plaintiffs,

   v.                                                     OPINION and ORDER

THE TOWN OF MINOCQUA, MARK
HARTZHEIM, SUSAN HEIL, JOHN THOMPSON,             23-cv-578-jdp
BRIAN FRICKE, ERIKA PETERSEN,
and DOES 3-10,

                          Defendants.

---

Plaintiff Kirk Bangstad owns The Minocqua Brewing Company in Minocqua, Wisconsin, and he alleges that the Town of Minocqua and the members of the town board have taken numerous adverse actions against him and his company to retaliate against him for his political speech and activities.[1] Plaintiffs assert claims under 42 U.S.C. § 1983, contending that defendants violated the First Amendment, the Equal Protection Clause, and the Due Process Clause.[2]

---

[1] The amended complaint does not say that "Does 3–10" are unknown board members, but rather that they are some other "individuals with policy and decision-making authority over the Town of Minocqua." Dkt. 35, ¶ 15. Plaintiffs provide no further information about who those individuals are or how they were involved in the alleged retaliation. Plaintiffs filed this lawsuit in August 2023, but they have not moved for leave to identify the Does or explain what they did. So the court will dismiss the Doe defendants from the case. If plaintiffs believe that other individuals were involved, they will have to move for leave to amend the complaint.

[2] A few months after filing this case, plaintiffs filed a second case against most of the same defendants, alleging new acts of retaliation. *The Minocqua Brewing Company v. The Town of Minocqua*, No. 24-cv-135-jdp (W.D. Wis.). The court denied a motion for preliminary injunction in that case and then consolidated the two cases. *Id.*, Dkt. 31. Defendants filed the motion to dismiss in this case before plaintiffs filed the new case, so the court did not include Case no. 24-cv-135-jdp in the caption for this opinion.

Defendants move to dismiss the case on both procedural and substantive grounds. Dkt. 37. For the reasons explained below, the court rejects all of defendants' procedural arguments and most of their arguments on their merits. But the court will dismiss plaintiffs' due process claim because the Due Process Clause only applies to certain deprivations of liberty or property, and plaintiffs do not explain how they were deprived of either.

BACKGROUND

Plaintiffs' complaint is 54 pages long, and it provides a detailed history of plaintiffs' disputes with defendants. But only a short summary is necessary to provide context for the motion to dismiss.

Plaintiffs own and operate a taproom in Minocqua, Wisconsin on Front Street. Each of the individual defendants is a member of the Minocqua town board.

In the last few years, Bangstad has become increasingly political. His activities include "publicly espous[ing] left-wing viewpoints, plaster[ing] his building with signs for Democratic political candidates, openly criticiz[ing] the TOWN's response to the COVID-19 pandemic, and r[unning] for public office as a Democrat." Dkt. 35, ¶ 120.

Plaintiffs allege that defendants disagree with Bangstad's political views and that they have retaliated against him in numerous ways, including the following:

- denying plaintiffs' request for a waiver from a requirement regarding the number of parking spaces the taproom needed, even though defendants have always granted waivers to other businesses, *id.*, ¶¶ 34–37;

- needlessly delaying consideration of plaintiffs' permit application to delay the opening of the taproom, *id.*, ¶ 45;

- requiring plaintiffs to enter into a revocable license agreement with the town as a condition of allowing plaintiffs to use town land that is adjacent to the

2

taproom, even though defendants had not required other businesses to enter into a similar agreement under similar circumstances, *id.*, ¶¶ 51–55;

- prohibiting plaintiffs from displaying signs outdoors, *id.*, ¶¶ 58–59;

- telling plaintiffs that they could not open the taproom until all conditions of their permit were satisfied, which was not true, *id.*, ¶¶ 63–64, 69, 71, 74–75;

- reporting violations of plaintiffs' permit while not reporting the same violations of other area businesses, *id.*, ¶¶ 65–68, 77, 88, 96–97;

- placing barriers in front of plaintiffs' driveway to block access from Highway 51, *id.*, ¶ 78;

- denying plaintiffs' request for a permit to use adjacent town land for parking, even though the previous business at plaintiffs' address was allowed to use the land, ¶ 85.

Most of these decisions were subject to review by Oneida County, and the county approved most of the decisions, deferring to the town board's recommendations.

Plaintiffs allege that defendants' conduct caused them harm, including the following:

- Plaintiffs secured a second lease when defendants told plaintiffs they could not open the taproom. *Id.*, ¶ 63.

- Plaintiffs hired a lawyer to help obtain the necessary permits because of all the delays. *Id.*, ¶ 80.

- Plaintiffs were required to pay additional application fees. *Id.*, ¶ 125.

- The delays and restrictions led to reduced beverage sales. *Id.*

- Plaintiffs paid an architect for site and building redesigns to comply with unnecessary permit requirements. *Id.*

The court will provide additional facts as they become relevant to the analysis.

ANALYSIS

The arguments in defendants' motion to dismiss can be grouped into two broad categories, procedural issues and the merits. The court will address the procedural issues first.

**A. Procedural issues**

Defendants contend that that some or all of plaintiffs' claims should be dismissed on four procedural grounds: (1) plaintiffs' requests for injunctive and declaratory relief are moot; (2) plaintiffs' claims are not ripe; (3) the court should abstain from exercising jurisdiction; and (4) the individual defendants have absolute immunity. None of these arguments require extended discussion.

First, defendants say that plaintiffs' requests for injunctive and declaratory relief are moot because plaintiffs ultimately received a permit to use the town land that is adjacent to the taproom. But defendants acknowledge that plaintiffs are not just seeking injunctive and declaratory relief; they are also seeking damages. Courts do not dismiss *parts* of claims at the pleading stage. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). So defendants' argument is premature.

In any event, plaintiffs' request for injunctive relief is not about receiving a permit, which plaintiffs had already received when they filed their amended complaint. *See* Dkt. 35, ¶ 98. Plaintiffs are alleging that defendants have engaged in a years-long pattern of retaliatory actions against plaintiffs based on their political speech. If that is true, that would be strong evidence that defendants are likely to continue retaliating against plaintiffs. It is also reasonable to infer that plaintiff will likely have more interactions with the town board. Under these circumstances, plaintiffs have standing to sue for injunctive relief to stop further retaliation. *See Lopez-Aguilar v. Marion Cty. Sheriff's Dep't,* 924 F.3d 375, 395 (7th Cir. 2019) (plaintiff has

4

standing to sue for injunctive relief when there is a "real or immediate threat that the plaintiff will be wronged again"). In fact, plaintiffs allege that defendants are currently retaliating against them by refusing to sign the revocable license agreement that defendants themselves proposed. A declaration or injunction could remedy that alleged violation, so plaintiffs' request for injunctive and declaratory relief is not moot.

Second, defendants contend that plaintiffs' claims are not ripe because plaintiffs have not appealed defendants' challenged actions to the Oneida County Board of Adjustment, which defendants say has the authority to review those decisions. At first look, this argument seems to contradict defendants' mootness argument: how can a claim be both moot and unripe at the same time? But a closer look suggests that defendants are really making a procedural default argument: defendants say that aggrieved parties must file any appeal with the board within 30 days, and plaintiffs failed to do that. There is a fundamental problem with that argument, which is that claims like plaintiffs' brought under 42 U.S.C. § 1983 do not have an exhaustion requirement. *Horsley v. Trame*, 808 F.3d 1126, 1129 (7th Cir. 2015).

Defendants try to get around this rule by citing the statement in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City* that certain claims are "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. 172, 186 (1985). But *Williamson* does not help defendant for two reasons: (1) *Williamson* was careful to clarify that its ruling did not apply to a failure to file an administrative appeal, *id.* at 193–94, which is what defendants are arguing; (2) *Williamson* was about claims under the Takings Clause (and Takings claims masquerading as Due Process claims); neither the Supreme Court nor the court of appeals has applied *Williamson* to other claims, *see Church of Our Lord and Savior*

5

*Jesus Christ v. City of Markham, Illinois*, 913 F.3d 670, 678 (7th Cir. 2019). So the court will not dismiss plaintiffs' claims for being unripe.

Third, defendants contend that the court should abstain from hearing the case under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). That case was about abstaining when a plaintiff's claim would interfere with criminal proceedings, but defendants cite *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), for the proposition that *Younger* also applies to administrative proceedings. As explained by the court of appeals, *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013), clarified that "*Younger* abstention is called for in exactly three classes of cases: where federal jurisdiction would intrude into ongoing state criminal proceedings, or into certain civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or into civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014). The administrative proceedings at issue in this case are not akin to a criminal prosecution, and they are not related to enforcement of court orders. In any event, defendants do not identify any ongoing administrative proceedings that this lawsuit would interfere with. So abstention is not appropriate.

Fourth, defendants contend that the individual town board members are entitled to legislative immunity or quasi-judicial immunity. Legislative immunity does not apply to the alleged conduct in this case. Immunity is determined based on a "functional approach," *Rehberg v. Paulk*, 566 U.S. 356, 363 (2012), which means that it "turns on the nature of the act." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). In the legislative context, the question is whether the defendants were enacting generally applicable rules. *See Biblia Abierta v. Banks*, 129 F.3d 899, 903–04 (7th Cir. 1997). Defendants' dealings with plaintiffs were primarily in the context of

6

his permit applications; plaintiffs also allege that defendants reported plaintiffs for violating permits and tried to prevent them from opening the business. None of these actions are generally applicable rules, so there is no legislative immunity.

Quasi-judicial immunity applies only to damages, not injunctive relief. *See Scruggs v. Moellering,* 870 F.2d 376, 378 (7thy Cir. 1989). Plaintiffs are seeking both kinds of relief, so it is premature to raise the issue in a motion to dismiss, *see BBL*, 809 F.3d at 325. It is premature for another reason, which is that defendants did not apply the proper test in their briefs for determining whether quasi-judicial immunity applies. When determining whether conduct is "quasi-judicial," courts look at six factors: (1) the need to assure that the individual can perform her functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for damages actions as a means for controlling unconstitutional conduct; (3) the insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal. *Capra v. Cook Cnty. Bd. of Review*, 733 F.3d 705, 709-10 (7th Cir. 2013). Both sides ignored this test. Defendants say that the *county* issues written decisions on property issues that are circumscribed by specific standards, but defendants do not say that they were subject to the same rules. So the court will not limit plaintiffs' claims based on quasi-judicial immunity. But defendants are free to raise a more developed argument at the summary judgment stage.

**B. Merits**

Plaintiffs are asserting three types of claims, though all of them are closely related. First, plaintiffs contend that defendants are retaliating against plaintiffs because of Bangstad's political speech, in violation of the First Amendment. Second, plaintiffs contend that defendants are treating plaintiffs less favorably than similarly situated businesses, in violation

7

of the Equal Protection Clause. Third, plaintiffs contend that defendants were biased when making permitting decisions, in violation of the Due Process Clause. Plaintiffs also assert a claim against the town under all three theories.

Defendants move to dismiss all of plaintiffs' claims for failure to state a claim upon which relief may be granted. At the pleading stage, the question is whether those allegations provide enough context to state a plausible claim, or, stated another way, whether the allegations both give notice to defendants regarding what they are accused of and allow the court to draw the reasonable inference that defendants are liable for the misconduct alleged. *See Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020).

**1. Retaliation**

Plaintiffs' primary claims are that defendants retaliated against plaintiffs in various ways because defendants disagreed with Bangstad's political speech. A First Amendment retaliation claim has three elements: (1) the plaintiffs engaged in activity protected by the First Amendment; (2) the defendants took adverse action against the plaintiffs that would dissuade a person of ordinary firmness from exercising his or her First Amendment rights; and (3) the defendants took the adverse action because of the plaintiffs' protected activity. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiffs' complaint adequately alleges each of these elements. First, plaintiffs describe their political speech and views, which are protected by the First Amendment. *Morse v. Frederick*, 551 U.S. 393, 403 (2007).

Second, plaintiffs allege that defendants repeatedly delayed plaintiffs' permit applications, recommended denying permits, recommended additional requirements and

8

restrictions on permits, and reported violations of permits, all of which cost plaintiffs additional time and money. That is enough to infer that an average person would be dissuaded from exercising his or her First Amendment rights.

Third, plaintiffs' amended complaint includes the following allegations to support an inference that defendants took the adverse acts because of Bangstad's speech:

- The adverse acts did not start until after plaintiffs became politically vocal. Dkt. 35, ¶¶ 22, 40, 100–02, 112.

- Defendants had granted permits to similarly situated applicants and did not include the same onerous requirements and restrictions in the permits of similarly situated businesses. *Id.*, ¶¶ 40–43, 50, 54–55.

- Defendants did not report permit violations of similarly situated property owners. *Id.*, ¶¶ 67–68, 77, 96–97.

- Two of the defendants were members of a Facebook group devoted to criticizing Bangstad for his political views. *Id.*, ¶¶ 47–48.

- One of the defendants expressed his concern during a meeting that plaintiffs might display "left-wing political signs" outside the taproom. *Id.*, ¶ 37.

- Defendants tried to stop plaintiffs from opening their taproom when defendants knew they did not have the legal authority to do so. *Id.*, ¶ 75.

To allege the causation element, the plaintiffs must "plausibly explain what led [them] to believe [their] treatment was because of the protected activity." *Dorsey v. Williams*, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022). Plaintiffs' allegations meet that low bar.

Defendants seek dismissal of plaintiffs' retaliation claims on five grounds, but none of them are persuasive. First, defendants say that the town owns the land adjacent to the taproom, so the town has a right to control speech on that land. Defendants do not explain the point

9

they are making. Defendants' rights over the land do not give defendants the right to retaliate against plaintiffs for exercising their constitutional rights.

Second, defendants say that their recommendations for adverse action against plaintiffs were government speech that is protected by the First Amendment. It is true that defendants have their own right to free speech, and that right must be taken into consideration when evaluating a retaliation claim. *See Novoselsky v. Brown*, 822 F.3d 342, 356–57 (7th Cir. 2016). But plaintiffs' allegations are not that defendants were simply being critical of plaintiffs; the allegations are that defendants were delaying and denying permits and adding gratuitous requirements and restrictions to the permits. That goes beyond expressing an opinion. As the Supreme Court recently held, government officials may not use their own speech "to punish or suppress disfavored expression." *National Rifle Association of America v. Vullo*, — U.S. —, 2024 WL 2751216, at *7 (May 30, 2024). That is what plaintiffs are alleging in this case.

Third, defendants make a related argument that they cannot be held liable because many of their decisions were only recommendations to the county; they did not have the final say. That argument is foreclosed by circuit precedent, which holds that a plaintiff may bring a constitutional claim against "subordinate government employees who act with unlawful motives to cause the actual decision-makers to take action against another employee." *Taylor v. Ways*, 999 F.3d 478, 488–89 (7th Cir. 2021). In other words, a person who makes a recommendation can be held liable if the recommendation brought about the adverse decision. This is called the "cat's paw" theory of liability. *Id.* Plaintiffs allege that the county was little more than a rubber stamp on defendants' recommendations, *see* Dkt. 35, ¶¶ 30–31, so plaintiffs may proceed under a cat's paw theory.

Fourth, defendants say that plaintiffs did not plead causation because they did not plead the absence of "probable cause." They cite *Nieves v. Bartlett*, in which the Supreme Court held that a claim for a retaliatory arrest is defeated by a showing that the officer had probable cause to arrest the suspect, unless there is evidence that similarly situated individuals were not arrested for similar conduct. 139 S. Ct. 1715, 1727 (2019). This argument fails for two reasons: (1) plaintiffs are not suing defendants for retaliatory arrest, and defendants have cited no Supreme Court or Seventh Circuit precedent extending *Nieves* to a town board making land-use decisions; and (2) plaintiffs allege that defendants did treat similarly situated property owners more favorably. So even if the holding of *Nieves* applies to land-use decisions, plaintiffs' allegations meet the *Nieves* standard.

Fifth, and finally, defendants say that some of the defendants were not in office during some of the alleged retaliatory actions. Defendants cannot be held personally liable for conduct they did not participate in, but defendants identify no specific conduct that any one defendant was not involved in, so they forfeited the issue for the purpose of their motion to dismiss. Defendants may make a more developed argument in a motion for summary judgment.

## 2. Equal protection

Plaintiffs assert an equal protection claim based on two types of adverse actions: (1) refusing plaintiffs' requests for parking-space waivers; and (2) issuing citations to plaintiffs for violating their permit by allowing outdoor dining. Plaintiffs rely on a class-of-one theory, which requires the plaintiffs to show that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Frederickson v. Landeros*, 943 F.3d 1054, 1061–62 (7th Cir. 2019). It is unresolved in this circuit

whether the plaintiff must also show that the defendant acted with animus or a hostile intent against him. *Brunson v. Murray*, 843 F.3d 698, 704 (7th Cir. 2016).

Plaintiffs have stated a claim under this standard. Plaintiffs allege that all other similarly situated businesses were granted parking space waivers and allowed to continue with outdoor dining without citations and that defendants have no rational basis for the difference in treatment. Dkt. 35, ¶¶ 152–87. Even assuming that animus is required, the allegations supporting retaliatory intent also support an inference of animus.

This claim overlaps with plaintiffs' retaliation claim, so it serves little or no purpose. But the court of appeals has assumed that a plaintiff may proceed with a retaliation claim and an equal protection claim even when the equal protection claim is a "mere rewording" of the retaliation claim. *See Thayer v. Chiczewski*, 705 F.3d 237, 255 (7th Cir. 2012). However, the two claims will likely rise and fall together. *See id*.

Defendants say that plaintiffs have not stated a claim because defendants had "a rational basis in recommending enforcement of zoning codes." Dkt. 39, at 37. But the question is not whether defendants' conduct was rational in the abstract; it is whether the difference in treatment was rational. *Frederickson*, 943 F.3d at 1061–62. Defendants do not address that question. The rational basis for the difference is not apparent from the face of the complaint, so the court will allow plaintiffs to proceed under a class-of-one theory.

### 3. Due Process

Plaintiffs' due process claim also overlaps substantially with their retaliation claim. They contend that defendants denied them due process during the permit application process because defendants were biased against plaintiffs.

12

A claim under the Due Process Clause requires plaintiffs to show two things: (1) they were deprived of "liberty" or "property" within the meaning of the clause; and (2) they did not receive the process they were due before or after the deprivation occurred. *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010). Plaintiffs' complaint focuses on the second element. They do not identify what property or liberty defendants took from them.

In their brief, plaintiffs say only that "[z]oning permit applicants in Wisconsin have a protected interest in obtaining zoning permits." Dkt. 40, at 21. Plaintiffs cite *Marris v. City of Cedarburg*, 176 Wis.2d 14, 498 N.W.2d 842 (1993), but that case did not involve a claim under the U.S. Constitution. Rather, the plaintiff had filed a writ of certiorari after the city determined that the plaintiff's property lost its nonconforming use status. *Marris*, 498 N.W.2d at 845. The question was whether the plaintiff had a "common law" right to a fair hearing. *Id.* at 846–47. The court did not consider whether the plaintiff had a liberty or property interest in obtaining a permit.

"A property interest of constitutional magnitude exists only when the state's discretion is clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." *Bryn Mawr Care, Inc. v. Sebelius*, 749 F.3d 592, 600 (7th Cir. 2014) (internal quotation marks omitted). Plaintiffs do not identify any specific criteria that limited defendants' discretion when making the permit decisions. In any event, plaintiffs' claim is not that they met the criteria; it is that defendants treated other similarly situated property owners more favorably. That is not a due process claim; it is a retaliation or equal protection claim. Plaintiffs are already proceeding on those claims, so the court will dismiss plaintiffs' due process claim.

### 4. Municipal liability

Plaintiffs contend that the Town of Minocqua may be held liable for all of the alleged constitutional violations. A constitutional claim against a municipal defendant such as the town requires the plaintiff to prove four things: (1) a constitutional deprivation; (2) action or inaction by the municipal defendant or its employees that can be fairly described as the municipality's policy; (3) notice to the defendant that its policy would lead to constitutional violations; and (4) a direct causal connection between the defendant's policy and the constitutional injury. *See Estate of Wallmow v. Oneida Cnty.,* 99 F.4th 385, 393–94 (7th Cir. 2024); *Thomas v. Neenah Joint School District*, 74 F.4th 521, 524 (7th Cir. 2023); *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022); *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021). The court has concluded that there was no due process violation, so the court will dismiss that claim against the town.

As for the retaliation and equal protection claims, defendants challenge only the second element for the purpose of their motion to dismiss, contending that plaintiffs have not identified a town policy. There are multiple types of policies that provide a basis for municipal liability: (1) an express policy; (2) a common practice that is so widespread and well settled that it constitutes a custom or usage with the force of law; or (3) conduct by a person with final policy-making authority. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). The underlying question is whether the conduct at issue is fairly attributable to the municipality.

In this case, there appears to be little dispute that the conduct of the individual defendants is fairly attributable to the Town of Minocqua. Throughout their briefs, defendants repeatedly treat the decisions of the town board as representing the decisions of the town itself, and many of defendants' arguments rest on that assumption. This suggests that the town board

14

members have final policy-making authority for the town, so their conduct is fairly attributable to the town.

Defendants contend that the individual defendants do not have final policy-making authority because the county can review the town board's decisions. It is true that "[w]hether a public official has final policymaking authority often turns on whether his decisions are subject to review by a higher official or other authority." *Milestone v. City of Monroe*, 665 F.3d 774, 780–81 (7th Cir. 2011). But *Milestone* and other cases that defendants cite are about whether one municipal employee's actions are subject to review by another employee of the *same* municipality. In this case, defendants point to no higher *town* authority than the town board. Municipal liability is appropriate when the "municipality . . . delegated authority to the individual to make policy on its behalf." *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014). In this case, it is reasonable to infer from plaintiffs' allegations that the individual defendants were making policy on behalf of the town. Defendants were not making policy on behalf of *the county*, but plaintiffs are suing the town, not the county.

Defendants do not cite any authority for the proposition that an official who represents the last word for the municipality being sued is not a final policy maker for the purpose of municipal liability simply because a municipality *not* being sued could review the decision. Distilled, defendants' contention is that a town cannot be held liable for its own decisions if the county or state could overrule that decision. That argument would be inconsistent with the principle articulated in *Taylor* and other cases that a person who makes a recommendation can be held liable under § 1983 if the recommendation brought about the final decision. 999 F.3d at 488–89. If the court accepted defendants' argument, it would mean that a town could avoid responsibility for any unconstitutional action, so long as that action was subject to review by

15

another entity, even if the other entity simply deferred to the town. Defendants cite no authority for that view, and the court will reject it.

Based on the allegations in the complaint, it is reasonable to infer that the town can be held liable for the decisions of the town board. The court will deny defendants' motion to dismiss the retaliation and equal protection claims against the town.

One last point. Both sides often made arguments in their briefs that applied only to a subset of the conduct plaintiffs are challenging, but the parties did not acknowledge the limitations of the argument. If either side files a motion for summary judgment, the court expects the parties to be more precise in those briefs, identifying specifically the alleged retaliatory action or actions to which each argument applies.

ORDER

IT IS ORDERED that:

1. "Does 3–10" are DISMISSED.

2. Defendants' motion to dismiss, Dkt. 37, is GRANTED in part. Plaintiffs' due process claims are DISMISSED for failure to state a claim. The motion to dismiss is DENIED in all other respects.

Entered June 3, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge